Paul TANNER
v.
The UNITED STATES.

Charles C. ADAMS
v.
The UNITED STATES.

Elizabeth Ruth PAUL, Executrix of the Estate of Earle Evarts Paul
v.
The UNITED STATES.
Nos. 543–53, 38–54, 39–54.

United States Court of Claims.
Nov. 2, 1954.

Burr Tracy Ansell, Washington, D. C., for plaintiffs.

Kendall M. Barnes, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

Each of these three cases involves the question whether an Army Reserve or Air Force Reserve officer on the Retired List, who is otherwise entitled to receive retired pay, may receive such pay if he holds civilian employment with the Government for which he is paid $3,000 or more per year.

Section 212 of the Economy Act of June 30, 1932, 47 Stat. 406, as amended in 1940, 54 Stat. 761, 5 U.S.C.A. § 59a, provides in material part as follows:

"(a) After the date of the enactment of this Act, no person holding a civilian office or position, appointive or elective, under the United States Government * * * shall be entitled, during the period of such incumbency, to retired pay from the United States for or on account of services as a commissioned officer in any of the services mentioned in the Pay Adjustment Act of 1922 [U.S.C., Title 37], at a rate in excess of an amount which when combined with the annual rate of compensation from such civilian office or position, makes the total rate from both sources more than $3,000; and when the retired pay amounts to or exceeds the rate of $3,000 per annum such person shall be entitled to the pay of the civilian office or position or the retired pay, whichever he may elect. As used in this section, the term 'retired pay' shall be construed to include credits for all service that lawfully may enter into the computation thereof.

"(b) This section shall not apply to any person whose retired pay, plus civilian pay, amounts to less than $3,000: *Provided,* That this section shall not apply to regular or emergency commissioned officers retired for disability incurred in combat with an enemy of the United States or for disabilities resulting from an explosion of an instrumentality of war in line of duty * * *."

The Act of July 1, 1947, 61 Stat. 238, 10 U.S.C.A. §§ 371 and 371b provides:

"371. All officers and employees of the United States or of the District of Columbia who shall be members of the Officers' Reserve Corps or the Enlisted Reserve Corps shall be entitled to leave of absence from their respective duties, without loss of pay, time, or efficiency rating, on all days during which they shall be ordered to active duty for training, or active duty, or to duty with troops or at field exercises, or for instruction, for periods not to exceed fifteen days in any one calendar year: *Provided further,* That members of the Officers' Reserve Corps or the Enlisted Reserve Corps who are in the employ of the United States Government or of the District of Columbia and who are ordered to duty by proper authority shall, when relieved from duty, be restored to the positions held by them when ordered to duty.

"371b. No existing law shall be construed to prevent any member of the Officers' Reserve Corps or the Enlisted Reserve Corps from accepting employment in any civil branch of the public service nor from receiving the pay incident to such employment in addition to any pay and allowances to which he may be entitled under the laws relating to the Officers' Reserve Corps and Enlisted Reserve Corps, nor as prohibiting him from practicing his civilian profession or occupation before or in connection with any department of the Federal Government."

The Officers' Reserve Corps named in the statute was the Officers' Reserve Corps of the Army.

Title III of the Act of June 29, 1948, 62 Stat. 1087, 10 U.S.C.A. § 1036 et seq., authorized retired pay for Reserve officers of the Army who have reached the age of 60 and have had 20 or more years of satisfactory service.

■ The above-quoted provision of the Economy Act of 1932 expressly prohibits what the plaintiffs ask for. Unless that prohibition was nullified by the above quoted Section 371b of the 1947 statute, the plaintiffs cannot prevail. The plaintiffs say that it was so nullified. They say that the retired pay which the 1948 statute authorizes for them is "pay and allowances to which [they] may be entitled under the laws relating to the Officers' Reserve Corps", within the meaning of the 1947 statute.

There is no problem here of a repeal of the 1932 Act by implication. The 1947 statute is express that "No existing law shall be construed to prevent" the receipt of the pay and allowances therein referred to. Our problem is to determine whether the expression "pay and allowances" includes the retired pay authorized by the 1948 Act.

Congress probably did not have retired pay for Reserve officers specifically in mind when it enacted the 1947 Act, since no such pay was available for Reserve officers on the basis of mere length of service until it was provided in the 1948 Act. There was no discussion of the 1947 Act on the floor of either House of Congress. In the House Committee, Captain Nunn of the Navy, having been called on for an explanation of Section 1(b), quoted above from the 1947 Act, said:

"Subsection 1(b) gives members of both Enlisted and Officers' Reserve Corps the same right to reemployment in any civil branch of the public service, to receive pay and allowances incident to such employment in addition to pay and allowances they may be entitled to, and to practice civil professions or occupations before or in connection with any department of the Federal Government. It gives them those rights that naval reservists now have under the last provision of Section 4 of the Navy Reserve Act of 1938 and that the National Guard men will get under section 2 of the proposed bill."[1]

Section 4 of the Naval Reserve Act of 1938, 52 Stat. 1176, contained, with reference to the Naval Reserve, language similar to that of Section 1(b) of the 1947 Act. It was, however, limited in a respect, the significance of which appears hereinafter.

The parties have urged upon us various rulings of the Comptroller General of the United States as showing the background against which the legislation in question should be projected, to ascertain the Congressional intent, and also as showing the administrative interpretation of the legislation, after its enactment.

On January 11, 1946, 25 Comp.Gen. 521, the Assistant Comptroller General ruled that in view of the express provisions of Section 4 of the Naval Reserve Act of 1938, referred to above, a retired member of the Naval Reserve could draw retired pay, computed in part on the basis of service as a commissioned officer, and at the same time hold a Government civilian position paying $3,750 a year. This ruling is strongly urged upon us by the plaintiffs.

On October 28, 1946, 26 Comp.Gen. 271, the Comptroller General ruled that a retired enlisted man of the Regular Navy, who, under the Act of February 21, 1946, 60 Stat. 26, 34 U.S.C.A. § 419 et seq., was entitled to have his retired pay computed on the basis of a commissioned officer rank which he had held when he was recalled to active service from an earlier retirement, was subject to the provisions of Section 212 of the Economy Act of 1932. We have said above that there was an important difference between Section 4 of the Naval

1. Hearings before Subcommittee No. 11, Legal, Committee on Armed Services on

H.R. 1845, 80th Cong., 1st Sess. [No. 139], Transcript, p. 2243.

Reserve Act of 1938, and Section 1(b) of the 1947 Act here in question, which applied to Reserve Officers of the Army. Section 4 of the 1938 Act said that no existing law should be construed to prevent a member of the Naval Reserve from holding a civilian position with the Government and receiving the pay of that position in addition to any pay and allowances to which he might be entitled "under the provisions of this Act," *i. e.*, the 1938 Act. The exemption from Section 212 was therefore not applicable to pay and allowances of a Reserve officer granted by legislation other than the 1938 Act. In the 26 Comp.Gen. 271 case, the retired pay in question was granted by the Act of February 21, 1946, hence the exemption was not applicable. The Comptroller General in his opinion suggested comparison with the earlier ruling in 25 Comp.Gen. 521. Comparison shows that in that case the pay and allowances in question were granted under the 1938 Act, and the ruling was that the exemption from Section 212 applied.

On March 13, 1947, 26 Comp.Gen. 674, the Comptroller General ruled that the pay of a Naval Reserve officer for flights made on inactive duty training could be collected, in addition to the pay of a civilian Government position held by the Reserve officer. The Comptroller General did not mention Section 212 and it is obviously not applicable, since it relates only to *retired pay*. The Comptroller General's unspecified reference to "dual compensation" laws was probably to 5 U.S.C.A. § 58 and 5 U.S.C.A. § 62, not involved in this case.

On December 17, 1948, 28 Comp.Gen. 367, the Comptroller General ruled on the very question which is before us, *i. e.*, whether an Army Reserve officer might receive retired pay in addition to his civilian Government pay, the latter being in excess of $3,000. The ruling was that he might not. The Comptroller General said he had not found any provision of law exempting such officers from Section 212 of the 1932 Economy Act. He did not mention the 1947 Act, here under consideration, and it must be that he was

not, at the moment, aware of it, since it was obviously at least arguably applicable.

On April 19, 1949, 28 Comp.Gen. 588, the Comptroller General ruled that a Naval Reserve officer receiving retired pay under Title III of the Act of June 29, 1948, was subject to Section 212. He pointed out that Section 4 of the 1938 Act granted exemption only for pay and allowances to which an officer was entitled under the provisions of that Act, *i. e.*, the 1938 Act, hence the exemption was not applicable to retired pay granted by the 1948 Act. It may be inferred from the Comptroller General's discussion that if the retired pay in question had been granted by the 1938 Act, the ruling would have been the same as that in 25 Comp.Gen. 521, *i. e.*, in favor of the exemption.

Decisions of June 24, 1949, 28 Comp. Gen. 727, and May 29, 1952, 31 Comp. Gen. 619, relate, respectively, to an officer of the Regular Army and an officer of the Regular Navy. The legislation involved in our cases applies only to Reserve officers, hence these rulings are not in point.

The Comptroller General's ruling in 25 Comp.Gen. 521, was squarely in favor of the position taken by the plaintiffs in this case. His ruling in 28 Comp.Gen. 367, was squarely against the plaintiffs' position, but he was, apparently, unaware of the statute on which the plaintiffs rely. His language in 28 Comp. Gen. 588, indicated that he still adhered to his position taken in 25 Comp.Gen. 521. We do not find in the Comptroller General's opinions a consistent course of administrative construction which helps us to interpret the statute.

Nor do we find anything really helpful in the legislative history of the statute. It will be remembered that at the time of its enactment in 1947 there was, generally speaking, no retired pay for Reserve Army officers for age or length of service. When Title III of the Act of June 29, 1948, supra, which gave retired pay to Reserve officers of the Army for length of service was under discussion

on the floor of the House of Representatives, Representative Johnson, Chairman of a Subcommittee of the Committee on Armed Services, in explanation of the bill, stated categorically that the Economy Act of 1932 would be applicable to retired pay received pursuant to the bill. 94 Cong.Rec. pp. 2481–2483.

In the 83d Congress, Public Law 300, approved February 20, 1954, amended Section 212 of the Economy Act of 1932 broadening its exemption relating to officers retired for disability. The Government points to language in Senate Report No. 885, 83d Congress, 2d Session, saying that "under the present law, retired commissioned officers are prohibited from receiving both military retired pay and pay as a civilian employee of the Government if such combined amounts exceed $3,000 per annum * * *," except in case of retirement for disability. This statement was certainly true of Regular Army officers, and the Committee may, in making it, have been unaware of the problem of the instant litigation with regard to Reserve officers. The statement does not seem to us to show that the Committee had definite views as to our problem.

The Government points out that if the plaintiffs' interpretation of the 1947 Act were correct, Reserve officers would enjoy an important privilege not available to retired officers of the Regular Army. The plaintiffs' answer is that the retired pay of Reserve officers, merely for length of service, is only a small fractional part of the retired pay of officers of the Regular Army.

The text of the statute in question has a fairly plain meaning. "Pay and allowances" of a Reserve officer would naturally include his retired pay, if Congress provided retired pay for him. There is not enough, of significance, in the administrative and Congressional treatment of the statute to persuade us to depart from the natural meaning of the words of the statute.

The defendant's motion for summary judgment is denied, and the plaintiffs' motion is granted. Entry of judgment will be suspended to await the filing of a report by the General Accounting Office showing the amounts due the plaintiffs.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.