Belle C. WATMAN, As Executrix of the
Last Will and Testament of
Morris Watman

v.

UNITED STATES.

No. 189–59.

United States Court of Claims.

March 1, 1961.

Jones, C. J., dissented.

George H. Foster, Washington, D. C.,
for plaintiff.

Paris T. Houston, Washington, D. C.,
with whom was Asst. Atty. Gen. George
Cochran Doub, for defendant. Arthur E.
Fay, Washington, D. C., was on the brief.

MADDEN, Judge.

The plaintiff, as executrix, succeeded to
the claim of Morris Watman who died

after he had filed the instant suit. In this opinion the word plaintiff will refer either to Morris Watman or to Belle C. Watman, Executrix, as appropriate to the time of the event under discussion.

Morris Watman, a commissioned officer in the military service, having been disabled in the service, was retired with disability retired pay in January 1947. Immediately upon his release from military service he went to work for the United States Veterans' Administration in a civilian position, and worked for that agency until December 31, 1956. During that entire period he was not paid his military retired pay, the given reason being that section 212 of the Economy Act of 1932, 5 U.S.C.A. § 59a, prohibited the payment of retired pay to one who was receiving a salary of the amount Watman was receiving as a civilian employee of the Government. The plaintiff claims that other legislation, which will be discussed hereinafter, made section 212 of the Economy Act of 1932 inapplicable to his situation. This suit is for the retired pay which was not paid during that part of the time that Watman worked for the Veterans' Administration which falls within the six years preceding the filing of the suit.

Section 212 of the Economy Act of 1932 provided that no civilian employee of the United States should be entitled to retired pay as a commissioned military officer, except to the extent that the civilian pay and the retired pay combined did not exceed $3,000 per annum. In 1955 the $3,000 figure was increased to $10,000. 69 Stat. 498.

Section 1(b) of the Act of July 1, 1947, 61 Stat. 239, 10 U.S.C. (1952 ed.) § 371b, as amended by the Act of July 9, 1952, 66 Stat. 506,* provided that no existing law should be construed to prevent any member of the reserve components of the armed forces from receiving civilian pay from the Government and also the pay and allowances to which he was entitled under the laws relating to the reserve components of the armed forces.

At the time of the adoption of this 1947 statute, the only pay and allowances to which a reserve officer, merely as such, was entitled were, except for disability retired pay which we shall discuss later, the small pay and allowances such as those incident to short periods of training duty. If a reserve officer was called into active service for an extended period, his pay and allowances were prescribed by other statutes.

In 1948 Congress enacted section 302 of the Act of June 29, 1948, 62 Stat. 1081, 1087, 10 U.S.C. (1952 ed.) § 1036a,** providing, so far as it related to the reserves, that one who performed satisfactory service in the reserves for 20 years, should, when he reached the age of 60 years, be entitled to retired pay. Unless the reserve officer had had many years of active service, this longevity retired pay was relatively small, compared to the retired pay which an officer of the Regular Army was entitled to when he became eligible for retirement for longevity.

In 1954, in the case of Tanner v. United States, 125 F.Supp. 240, 129 Ct.Cl. 792, this court held that the exemption from the Economy Act, granted by the 1947 Act discussed above, entitled a reserve officer, who had been retired for *longevity*, to receive his retired pay as well as his pay as a civilian Government employee. The Supreme Court denied certiorari in the Tanner case, 350 U.S. 842, 76 S.Ct. 83, 100 L.Ed. 751, and the Comptroller General advised the Secretary of Defense that payments might be made pursuant to the doctrine of Tanner. 35 Comp.Gen. 497.

In 1957 the United States District Court for the Southern District of California, in the case of United States v. Toma, D.C., 148 F.Supp. 489, held that a reserve officer retired for *disability* was exempted by the 1947 Act from the provisions of the Economy Act and could receive both his retired pay and a civilian Government salary, regardless of the amount of the salary. The significance

* Now 5 U.S.C.A. § 30r.

** Now 10 U.S.C.A. §§ 676, 1331, 1332.

of the Toma decision lay in the fact that the disability retired pay there involved was the same as a Regular Army officer would have received for the same disability. Such disability retired pay for reserve officers who had been disabled while on extended active service was authorized by section 5 of the Act of April 3, 1939, 53 Stat. 557, 10 U.S.C. (1946 ed.) § 456.† The effect of the Toma decision was that a reserve officer retired for disability was exempt from the restrictions of the Economy Act, while a Regular Army officer, retired for the same disability and receiving the same retired pay, was subject to those restrictions. The Government's brief in the instant case says that the Government did not raise the Economy Act question in the Toma case.

In the case of Madden v. United States, 138 Ct.Cl. 873, this court without opinion entered judgment for the plaintiff upon a stipulation of the parties that the case was controlled by the Tanner decision. The court, because of the stipulation, gave no consideration to the problem. The plaintiff was, in fact, a reserve officer retired for disability, and the judgment gave him his retired pay without regard to the restrictions of the Economy Act.

In 36 Comp.Gen. 808 the Comptroller General, on June 11, 1957, advised the Secretary of Defense that, based on the decisions in the Toma case and the Madden case, and the decision of the Solicitor General of the United States not to appeal the Toma decision, the exemption from the Economy Act, granted by the 1947 statute, would apply to reserve officers receiving disability retired pay under the 1939 Act. Pursuant to this advice from the Comptroller General, the Adjutant General of the Army issued "Retired Army Personnel Bulletin, Department of the Army, August 1957", informing retired personnel of the ruling and of whom to apply to for retroactive payment. It is safe to assume that all eligible officers took advantage of the ruling.

The plaintiff applied to the Comptroller General for the retired pay which had been, because of the application of the Economy Act, withheld from him during his civilian employment with the Veterans' Administration from January 1947 to December 31, 1956. The application was received by the Comptroller General on August 14, 1957, i. e., in the same month in which the Adjutant General had advised retired officers of the new ruling of the Comptroller General. The Comptroller General denied that part of the claim covering the period from January to August 14, 1947 because it was more than ten years old and he did not have authority to consider it. The balance of the claim, which was within the ten-year period of his authority, he denied for other reasons which will be discussed hereinafter.

The plaintiff had, in 1942, been appointed a First Lieutenant, Army of the United States, without specification of a particular component of the Army. He was later called to active duty, and was promoted to captain and, on August 8, 1946, to major. On that same day he was given a commission as a major in the Officers' Reserve Corps. He was later determined to have become physically disabled in line of duty and on January 26, 1947, he was certified by the War Department as entitled to receive retired pay pursuant to section 5 of the Act of April 3, 1939, discussed above. He was released from active duty on January 27, 1947. He remained a member of the Officers' Reserve Corps until his death in 1959. As appears above, he went to work for the Veterans' Administration on the day he was released from the Army.

The Comptroller General at first disallowed the plaintiff's claim for the period which was within his ten-year authority to consider it, because of his mistaken belief that the plaintiff had been first appointed to the Officers' Reserve Corps in 1952, some five years after he had been released from the Army for disability. He said that since the plaintiff was not,

† Now 10 U.S.C.A. §§ 1475–1480, 3687, 3721.

when appointed to the Officers' Reserve Corps, physically qualified for service, his appointment was "of doubtful legality and does not furnish sufficient basis for payment of retired pay concurrently with civilian salary."

The Comptroller General was advised of his error in regard to the date of the plaintiff's commission in the Officers' Reserve Corps. He did not, however, allow the claim and the plaintiff, on April 24, 1959, filed suit in this court seeking recovery of so much of the withheld retired pay as had accrued within six years of the filing of the petition.

The plaintiff was retired for disability in 1947. He at that time held a commission in the Officers' Reserve Corps. *Ergo*, says his counsel, he was entitled to exemption from the Economy Act, under the pertinent statutes and administrative rulings. The Government says that the fact that the plaintiff held a commission in the Officers' Reserve Corps has nothing to do with the case. It says, correctly, that he was called into active service under his 1942 commission in the Army of the United States, and not under his 1946 commission in the Reserve Corps. He was disabled in his service in the Army of the United States, and was retired in 1947 for that disability so incurred.

The Government's argument that the plaintiff's commission in the Officers' Reserve Corps is irrelevant seems to us to be valid. But we think that membership in the Army of the United States conferred upon the plaintiff the same rights and privileges as membership in the Officers' Reserve Corps would have done. The Joint Resolution of September 22, 1941, 55 Stat. 728, 10 U.S.C. (1946 ed.) § 484, note, authorized the President to make temporary appointments of officers in the Army of the United States, without assigning them to any particular component of the Army. The Joint Resolution contained this language:

"*Provided further*, That any person appointed as an officer of the Army of the United States under the provisions of this Act shall receive the same pay and allowances and be entitled to the *same rights, privileges, and benefits as members of the Officers' Reserve Corps* of the same grade and length of active service:" (Emphasis supplied).

When the plaintiff was appointed in 1942, and was retired for service-incurred disability, with retired pay, in 1947, pursuant to the provisions of the 1939 Act, he was, because of the provisions of the 1941 Joint Resolution quoted above, as much entitled to the benefits of the 1947 Act exempting officers from the restrictions of the Economy Act as a reserve officer would have been.

The Joint Resolution quoted above was repealed on July 25, 1947, 61 Stat. 449 at page 451, section 2, fourth paragraph, effective July 1, 1948. The repealing statute contained no saving clause. It did not, of course, have the effect of taking away the plaintiff's retired pay. Did it have the effect of nullifying his right, if he had a right, to exemption from the Economy Act?

In Sarles v. United States, 141 Ct.Cl. 709, the plaintiff, a member of the National Guard, was retired for longevity under the 1948 Act, 62 Stat. 1081, 1087,†† he having reached the age of 60 years. He was a civilian employee of the Federal Government. The Government conceded that he was entitled to exemption from the Economy Act until a date in 1951 when he was discharged from his commission in the National Guard, but contended that thereafter he was no longer a "member" of the National Guard and hence was not entitled to the exemption given by the 1947 Act. This court held that the exemption was intended for those who had earned it by membership in the National Guard, and that the termination of that membership did not forfeit Sarles' right to the exemption. The Comptroller General, in his decision of May 1, 1959, B135719, 38

†† Now 10 U.S.C.A. §§ 1331, 3966.

Comp.Gen. 741, stated that he would follow the Sarles decision.

From the foregoing it follows that the plaintiff, as a retired officer of the Army of the United States, had the same rights and benefits as a reserve officer, and that the repeal of the statute under which he had been appointed an officer of the Army of the United States did not forfeit rights which had accrued to him while he was such an officer.

We now reach the question whether, if plaintiff had been a reserve officer, retired for disability, he would have been entitled to the exemption granted by the 1947 statute. This court has not decided that question. As shown above, the District Court in the Toma case, supra, decided it in the affirmative. This court in the Madden case, supra, rendered a judgment for a plaintiff so situated, but the court gave no consideration to the question, since the Government had stipulated that the case was on all fours with Tanner, supra.

In the case of Leonard v. United States, 145 F.Supp. 758, 760, 136 Ct.Cl. 686, certiorari denied 353 U.S. 976, 77 S.Ct. 1058, 1 L.Ed.2d 1136, this court held that an officer in the Army of the United States, retired with retirement pay for disability, was not exempt from the provisions of the Economy Act. The court said:

"We do not think this particular provision of the statute [10 U.S.C.A. § 371b] applies to him nor that he can be regarded as a member of any reserve component.

"The statute, section 371b, supra, serves to exempt longevity retired members of reserve components from the dual compensation restriction of section 212(a) of the Economy Act of 1932."

In Palmer v. United States, No. 356–58, decided January 20, 1960, the plaintiff was, like Leonard, an officer of the Army of the United States, and not a reserve officer. This court, *per curiam*, dismissed the plaintiff's petition on the authority of Leonard.

So far as concerns the court's statement in the second paragraph of the above quotation from Leonard, indicating the court's view that the 1947 statute exempted only *longevity* retired pay from the restrictions of the Economy Act, we think that reason is no longer valid. As we have shown above, the Comptroller General has advised the Army, and the Army has advised the retired officers, that officers retired for disability are entitled to the exemption. By this time, all of them would have received their back pay, and would be receiving their current pay. It would be grossly unfair to the occasional officer, whose pay had been denied him on some other ground, which we did not find to be valid, for us to deny him recovery on this ground. The law on this point has been made by the actions of the Government's administrative authorities, and in order to do equal justice we should follow it.

The first paragraph of the above quotation from Leonard, where the court says that Leonard could not be regarded as a member of any reserve component, requires discussion. That statement could have meant that he had never been a member of a reserve component, since he was an Army of the United States officer and not a reserve officer. But such a conclusion would have been in disregard of the provision of the 1941 Act giving Army of the United States officers the same rights, privileges and benefits as reserve officers. Or the statement could have meant that he was no longer a reserve officer (or its equivalent) at the time for which he claimed the exemption from the Economy Act. This conclusion would have been contrary to Sarles.

In Palmer, before the case reached this court, the Comptroller General had allowed the exemption to Palmer up to June 30, 1948, the date when his commission in the Army of the United States expired. The Comptroller General took the position that the language of the 1947 Act required that one must be a member of a qualified component at the time for which he seeks the exemption. Our Sarles decision, discussed above, is con-

trary to the Comptroller General's holding in Palmer's case. In the case of Kerns v. United States, No. 143–59, filed March 27, 1959, a reserve officer was paid disability retired pay and also his civilian Government salary from the time of his retirement in 1945 until his reserve commission expired in 1953. After 1953 he was denied retirement pay on the ground of the Economy Act. He filed his suit. When this court issued the Sarles decision, Kern's case was settled and his suit was dismissed.

■ Upon reconsideration, we reaffirm our decision in Sarles and hold that membership in the required unit at the time of retirement is the decisive fact and that rights acquired at that time were not intended to be taken away by the subsequent loss of such membership.

In an opinion, No. B123382, 40 Comp. Gen. 136, rendered on August 26, 1960 to the Secretary of Defense, the Comptroller General cites this court's decision in Henry L. Bowman, et al. v. United States (Nathan Reed Warthen, plaintiff No. 5), No. 108–58, rendered January 14, 1959, reaffirming Sarles. He goes on to say that, since his opinion of May 1, 1959, 38 Comp.Gen. 741, he has been allowing exemptions from the Economy Act to reserve officers retired for disability under the 1939 Act,[1] and applying the Sarles and Bowman doctrine to them, but that as to officers of the Army of the United States without component, he has been allowing them exemption only so long as they continued to have a status in the Army of the United States. He cites the provision, hereinabove quoted, of the 1941 statute, giving Army of the United States officers the same rights, privileges and benefits as reserve officers, as supporting his allowance of the exemption so such officers up to the date of the repeal, effective in 1948, of the 1941 statute authorizing the appointment of officers without component in the Army of the United States. Then he says that he

has denied exemption of such officers after that date on the basis of this court's decision in Leonard v. United States, 145 F.Supp. 758, 136 Ct.Cl. 636, certiorari denied 353 U.S. 976, 77 S.Ct. 1058, 1 L. Ed.2d 1136.

The Comptroller General's opinion up to this point justifies his denial of the claim of the instant plaintiff, on the basis of our Leonard decision.

The Comptroller General goes on, however, to say that our decision in Palmer, supra,

"creates doubt, therefore as to the propriety of paying retired pay under the 1939 Act, * * * to reservists and Army of the United States personnel and similar personnel of the Air Force, where such persons are otherwise within the dual compensation restrictions of the Economy Act. We find no basis under the language used by the court in the Palmer case (and in the concurring opinion) for distinguishing between a member of the Army of the United States paid retirement pay under the provisions of the 1939 Act and a reservist paid under the same law. Accordingly, we must conclude that, until such time as the position of the court is clarified, further payments of this type should not be made under the statutory provisions."

This means, of course, that the numerous reserve officers who have been receiving their disability retired pay and their Government salaries, will no longer receive their retired pay to the extent that the two amounts exceed the maximum set by the Economy Act. As we have shown above, the administrative decision that they should have the exemption was based upon the District Court decision, the stipulated judgment in this court, and the acquiescence of the Government's legal advisers.

[1]. The Comptroller General had begun, as early as June 11, 1957, to apply the Toma doctrine to reserve officers. See the discussion earlier in this opinion of 36 Comp.Gen. 808 and the Army's activities pursuant to that opinion.

With regard to the Comptroller General's August 26, 1960 opinion, we make these observations:

1. He is right in saying that there is no basis for distinguishing between the status of reserve officers and Army of the United States officers.

2. He is right in saying that the language in Leonard and Palmer casts doubt upon the propriety of allowing the 1947 Act exemption to officers, either reservists or Army of the United States officers, retired under the 1939 Act, that is, retired for disability.

The plaintiff Leonard did not, although he mentioned the point, succeed in impressing us with the argument that, because of the equality of rights provision in the 1941 statute, his status as an officer of the Army of the United States was the same as if he had been a reserve officer. We therefore did not face the question of what his rights would have been if he had been a reserve officer, or had had rights equivalent to those of such an officer. The mention of *longevity*, first paragraph of our language in Leonard, quoted earlier in this opinion, might well be said to be *obiter*.

The court's *per curiam* Palmer decision simply followed Leonard. The plaintiff in Palmer, being an Army of the United States retiree, urged upon the court the equality proviso of the 1941 statute. The writer of the present opinion, in a concurring opinion in Palmer, said that neither a reserve officer nor an Army of the United States officer who had been retired for disability should have the exemption granted by the 1947 Act. The court was not aware of the fact that the Comptroller General, since June 11, 1957 had, on the basis of the February 14, 1957 decision in Toma, and the May 8, 1957 stipulated judgment in Madden, been allowing, and all interested personnel had been advised that he was allowing, the exemption to disability retired reserve officers.

■■ The Comptroller General is justified in suggesting that we clarify the doubts raised by our language in Leonard, and in the concurring opinion in Palmer. We do so by recognizing that, for some years, the 1947 Act has been receiving a practical construction by all the interested agencies of the Government and that we are not willing to create the confusion that would result from a reversal of that construction. We also note that in codifying the exemption provision of the 1947 Act, Congress was aware of this court's decision in Tanner, and on June 1, 1956, the chief representative of the General Counsel's office in the Department of Defense assured the counsel for the Subcommittee of the Senate Committee on the Judiciary which was holding hearings on H.R. 7049, that not only would the new bill make no change in the 1947 Act as it had been judicially interpreted, but the new bill would expressly define the word "pay" to include "retired pay."[2] Of some interest, in view of the definition of "pay" in the 1956 Act to include retired pay, is the fact that on January 18, 1961, a bill was introduced in the House which, if enacted, will equalize the Economy Act exemption rights of reserve officers of the Navy and Marine Corps with those of the Army and Air Force and National Guard by making the exemption effective as of July 1, 1947. H.R. 2940, 87th Cong., 1st Sess. We therefore overrule Leonard and Palmer. We hold that an Army of the United States officer is entitled to the exemption granted by the 1947 Act; that that exemption applies to retired pay received by such officer pursuant to the 1939 Act; and that under the doctrine of Sarles and Bowman, the plaintiff is en-

2. Hearings before a Subcommittee of the Committee on the Judiciary, United States Senate, 84th Cong., 2d Sess., on H.R. 7049, an Act to revise, codify, and enact into law, Title 10 of the United States Code, entitled "Armed Forces", and Title 32 of the United States Code, entitled "National Guard", June 1, 1956, pp. 33 and 34. The 1947 Act exemption for reserve officers was codified at 70A Stat. 632, 5 U.S.C.A. § 30r(c). The new definition of "pay" appears at 70A Stat. 3, 10 U.S.C.A. § 101(27).

titled to recover. In justification of our overruling of our previous decisions it is only fair to ourselves to say that we have never, before considering this case, had before us all of the legal and factual materials necessary to the solution of these difficult problems.

The defendant's motion for summary judgment is denied. The plaintiff's similar motion is granted. Plaintiff is adjudged entitled to recover and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

DURFEE and LARAMORE, Judges, concur.

WHITAKER, Judge (concurring).

I have doubt about the correctness of our decision in Tanner v. United States, 125 F.Supp. 240, 129 Ct.Cl. 792, but, in the light of the acceptance by Congress of the construction we placed on the 1947 Act (61 Stat. 238, 239), as evidenced by subsequent Acts of Congress and the committee reports on those Acts, as set forth in the majority opinion, and in the light of the concurrence in, and reliance upon, that opinion by the Executive Department and the Comptroller General, I accept it as a correct statement of the law, and I concur in the conclusion reached by the majority herein.

JONES, Chief Judge (dissenting).

The issue in this case is whether the plaintiff is relieved from the dual compensation provisions of the Economy Act of 1932 which limits the amount of retired pay that a civilian employee of the United States should receive as a commissioned military officer. Section 212 (a) of the Economy Act of June 30, 1932, 47 Stat. 382, 406, provides as follows:[3]

"(a) After the date of the enactment of this Act, no person holding a civilian office or position, appoin-

tive or elective, under the United States Government * * * shall be entitled, during the period of such incumbency, to retired pay from the United States for or on account of services as a commissioned officer in any of the services mentioned in the Pay Adjustment Act of 1922 [U.S.C., title 37], at a rate in excess of an amount which when combined with the annual rate of compensation from such civilian office or position, makes the total rate from both sources more than $3,000; and when the retired pay amounts to or exceeds the rate of $3,000 per annum such person shall be entitled to the pay of the civilian office or position or the retired pay, whichever he may elect.

"As used in this section, the term 'retired pay' shall be construed to include credits for all service that lawfully may enter into the computation thereof."

Section 212(b) of the Economy Act, 47 Stat. 382, 406, as amended in 1940, 54 Stat. 761, provides as follows:[4]

"(b) This section shall not apply to any person whose retired pay, plus civilian pay, amounts to less than $3,000: *Provided, That this section shall not apply to regular or emergency commissioned officers retired for disability incurred in combat with an enemy of the United States or for disabilities resulting from an explosion of an instrumentality of war in line of duty * * *.*" 5 U.S. C.A. § 59a. [Emphasis supplied.]

The plaintiff was retired for physical disability pursuant to the Act of 1939, supra. The first question for decision is whether the Act of 1947, 61 Stat. 238, 239, relieves the plaintiff of the effect of the dual compensation provisions of the Economy Act by right of his status as a Reserve officer. The plaintiff con-

---

3. The exemption of § 212 relating to Regular Army officers was somewhat broadened by public law, approved February 20, 1954, 68 Stat. 18.

4. The $3,000 limitation was raised to $10,000 on August 4, 1955, amended by § 2 of Public Law 239, 69 Stat. 498.

tends that as a reservist he is exempted from the Economy Act on the basis of our opinion in Tanner v. United States, 1954, 125 F.Supp. 240, 129 Ct.Cl. 792, certiorari denied 1955, 350 U.S. 842, 76 S.Ct. 83, 100 L.Ed. 751. The plaintiff in Tanner was retired for *longevity* as a Reserve officer and entitled to retired pay pursuant to Title III of the Act of June 29, 1948, 62 Stat. 1087. The issue was whether the plaintiff's civilian employment would preclude him from receiving retired pay for the period of that employment because of the Economy Act. This court stated the issue in Tanner as follows at page 242 of 125 F.Supp., at page 795 of 129 Ct.Cl.:

"The 1947 statute is expressed that 'No existing law shall be construed to prevent' the receipt of the pay and allowances therein referred to. Our problem is to determine whether the expression 'pay and allowances' includes the retired pay authorized by the 1948 Act."

The 1947 statute of which this court spoke in Tanner is the Act of July 1, 1947, 61 Stat. 238, 239, 10 U.S.C. § 371b, which provides:

"No existing law shall be construed to prevent any member of the Officers' Reserve Corps or the Enlisted Reserve Corps from accepting employment in any civil branch of the public service nor from receiving the pay incident to such employment in addition to any pay and allowances to which he may be entitled under the laws relating to the Officers' Reserve Corps and Enlisted Reserve Corps, nor as prohibiting him from practicing his civilian profession or occupation before or in connection with any department of the Federal Government."

In Tanner this court held that "pay and allowances" under the 1947 Act included retired pay for longevity to Reserve officers under the Act of 1948.

The extension of the phrase "pay and allowances" sought by the plaintiffs to cover the class of military men retired for physical disability has caused this court to inquire once again into the meaning of the phrase "pay and allowances." I begin therefore with an examination of the legislative history of the 1947 Act. The Act of July 1, 1947, 61 Stat. 238, was an amendment to an earlier act, Act of May 12, 1917, 40 Stat. 40. That Act provides on page 72:

"*Provided further,* That members of the Officers' Reserve Corps who are in the employ of the United States Government or of the District of Columbia and who are ordered to duty by proper authority shall, when relieved from duty, be restored to the positions held by them when ordered to duty."

The purpose of the 1917 Act was to require that members of the Officers' Reserve Corps who were in the employ of the United States Government or the District of Columbia be restored to their civilian positions when they were relieved from active duty with the Army. The Act of July 1, 1947, 61 Stat. 238, amended the 1917 Act by inserting in the same above-quoted paragraph of the 1917 Act the words "or the Enlisted Reserve Corps," after the words "Officers' Reserve Corps." Section 1(b) of the Act of 1947, 61 Stat. 238, 239, further amended the 1917 Act by granting to reservists who were Federal employees still another benefit with regard to their annual active duty training period. The Act of 1947 granted them civilian pay for training periods. That this was the objective of the provision of the Act of 1947 here in issue, § 1(b) of the Act of 1947,[5] is made clear by the Report of the House Committee on Armed Services on the Act of July 1, 1947, H.R.Rep.No.483, U.S.Code Cong.Serv., 80th Cong., 1st Sess. p. 1265 (1947), which provides:

"The purpose of the bill is to grant members of the Enlisted Reserve Corps who are employees of a Federal agency *the same annual leave rights, with pay, for training*

5. The text of this provision is set out on page 480 of this opinion.

purposes, as are now enjoyed by the officers of the Reserve Corps of the Army and officers and enlisted men of the Naval Reserve." [Emphasis supplied.]

When in the light of the legislative history of the Act of 1947, our decision in Tanner is reflected upon, it appears in retrospect that our interpretation of the phrase "pay and allowances" may have been too broad. In Tanner we expressed some misgiving with regard to the result ultimately reached therein. We observed in Tanner, 125 F.Supp. at page 243, 129 Ct.Cl. at page 798:

> "It will be remembered that at the time of its enactment in 1947 there was, generally speaking, no retired pay for Reserve Army officers for age or length of service. When Title III of the Act of June 29, 1948, supra, which gave retired pay to Reserve officers of the Army for length of service was under discussion on the floor of the House of Representatives, Representative Johnson, Chairman of a Subcommittee of the Committee on Armed Services, in explanation of the bill, stated categorically that the Economy Act of 1932 would be applicable to retired pay received pursuant to the bill. 94 Cong.Rec. pp. 2481–2483."

Our original misgivings in Tanner, however, were not focused on the problem as it now presents itself: *does the legislative history of the phrase "pay and allowances" in the Act of 1947 reveal a clear and limited meaning, i. e., compensation by the Government of Federal employees called to active duty training for short periods?* In view of the discussion of the legislative history of the Act of 1947 above, the answer to this question appears to be in the affirmative.

We are therefore met with the problem of what the status of the Tanner case now is. It should first be noted that though Tanner was decided in 1954 the Congress has not changed the result reached therein. Further, because of the retired reservists who have relied on our opinion in Tanner, and who are now being paid in accordance with it, I think due deference to the doctrine of *stare decisis* should persuade us, in the absence of specific legislative directive, not to disturb that decision. Since the rights of these reservists have been judicially determined, their entitlement to continued retirement pay for longevity should not be disturbed. My decision to abide with Tanner of course can in no way, in the light of what has been said above, justify further latitude in interpreting and extending the phrase "pay and allowances" to cover disability retired pay.

I have, until this point, spoken of plaintiff as if his status were that of a reservist. The writer of the majority opinion, however, points out that under the facts of this case the plaintiff's commission in the Officers' Reserve Corps is irrelevant. The plaintiff was not retired for physical disability as a Reserve officer but rather pursuant to his status as an Army of the United States officer. However, the majority reasons that plaintiff's status as an Army of the United States officer confers upon him the same rights and privileges which he would have had as a reservist. In support of this proposition, the Joint Resolution of September 22, 1941, 55 Stat. 728, 729, is relied upon as follows:

> "*Provided further,* That any person appointed as an officer in the Army of the United States under the provisions of this Act shall receive the same pay and allowances and be entitled to the *same rights, privileges, and benefits as members of the Officers' Reserve Corps* of the same grade and length of active service * * *." [Emphasis supplied.]

That the 1941 Resolution was intended to give Army of the United States officers the same rights and privileges as Reserve officers, I have no doubt. I agree further that the repealing statute, 61 Stat. 451 (1947), effective July 1, 1948, could not divest an Army of the United States officer such as the plaintiff of any benefit conferred as a result of the 1941 Resolution. But what is to me decisive is that the 1941 Resolution certainly can-

not be read to place an Army of the United States officer in a better position than a reservist. If Army of the United States officers are to be granted the same rights and benefits as Reserve officers, then it is of course crucial to determine the rights of reservists. In the discussion above, I have pointed out that Tanner permitted reservists exemption when they were retired for longevity. But Tanner went no further than that. There is no authority in our decisions for allowing an exemption to reservists retired for physical disability.[6] Plaintiff therefore cannot predicate his right to exemption on the ground that if he were to be put in the same position as a reservist, he would be immunized from the restrictions of the Economy Act.

If, therefore, the plaintiff is to be exempted at all from the Economy Act, it must be by right of his status as an Army of the United States officer. This brings me to the second issue in this case: whether an Army of the United States officer retired for physical disability pursuant to the Act of 1939 is exempted from the Economy Act. On this question, this court has spoken. In Leonard v. United States, 1956, 145 F. Supp. 758, 136 Ct.Cl. 686, an Army of the United States officer discharged for disability under the Act of 1939, sought exemption from the Economy Act. In Leonard we held that the plaintiff came squarely within the prohibition of the Economy Act. We said simply that the Economy Act had not been repealed and that the plaintiff in Leonard was precluded from receiving his retirement pay for the period he served as a Federal civilian employee.

Again in Palmer v. United States, No. 356–58, decided January 20, 1960, this court was confronted with the claim of an Army of the United States officer that he was entitled to exemption from the Economy Act. In a *per curiam* opinion this court rejected the claim and said that on the basis of our opinion in Leonard the plaintiff could not recover. Judge Madden concurred in a separate opinion in Palmer. He said that to permit an Army of the United States officer to receive the same retired physical disability pay as an officer of the Regular Army would grant the Army of the United States officers "a valuable additional privilege, exemption from the Economy Act, which is denied to Regular Army officers. I do not think that the Congress intended such a result, and I would interpret the statute accordingly. I therefore concur in the dismissal of the plaintiff's petition." [7]

It is true that certain classes of regulars whose physical disability was incurred in service to the Nation in combat or in connection with waging war against the Nation's enemies are specifically exempted from the Economy Act. See § 212(b) of the Economy Act of 1932, 47 Stat. 382, 406, as amended in 1940, 54 Stat. 761, which is set out on page 479 of this opinion. Section 212(b) was further amended to enlarge the class of regulars granted exemption in 68 Stat. 18 (1954). What is of course crucially significant about these specific exemptions that the Congress made in regard to regulars retired for physical disability is that *all* regulars are not granted such exemption. Further, no exemption for disability retired pay *in haec verba* has ever been made by the Congress for Army of the United States officers or Reserve officers. What the plaintiff asks here then is for us by judicial decision to grant a broader exemption to Army of the United States officers and Reserve officers than the Congress has seen fit to grant to regulars in specific legislation.

It is evident from the majority opinion in the instant case that it does not

---

6. It is true that in Madden v. United States, 1957, 138 Ct.Cl. 873, this court granted a judgment to a reservist retired for disability exempting him from the Economy Act. That case was controlled by Tanner on the stipulation of the par-

ties. No briefs were filed nor was any opinion rendered by this court.

7. Palmer v. United States, No. 356–58, decided January 20, 1960, slip opinion, pp. 3–4.

now depart from the sound reasoning set forth in the concurring opinion in Palmer. However, the majority opinion suggests that at this juncture confusion and unfairness will result if Palmer and Leonard are not overturned. The reason for this is that as of June 11, 1957, the Comptroller General has been allowing Reserve officers, retired for disability, exemption from the Economy Act under the purported authority of the decision of the Federal District Court in United States v. Toma, D.C.S.D.Cal.1957, 148 F. Supp. 489, and by reason of the stipulated judgment in Madden v. United States, 1957,[8] 138 Ct.Cl. 873. As was pointed out in the majority opinion, the Economy Act question was not even raised by the Government in Toma.

The fact that the Comptroller General chose to follow the Federal District Court in Toma should not cause us now to call into question the essential soundness of Leonard and Palmer. When the Comptroller General is in error as to the law (which is a somewhat natural error in view of the confused state of the decisions), it is hardly our duty to change the law, but rather we should call upon him to change his practices so as to conform with the law.

The gravamen of this dissent is that the plaintiff has no legal basis for exemption from the Economy Act of 1932 such as would entitle him to retired pay for physical diability either as a reservist or as an Army of the United States officer.

The majority opinion adds further to any confusion that may exist by rankly discriminating against Regular Army officers. I have always believed that neither Reserve nor Regular officers should be discriminated against but should receive equal treatment. This is the purport and meaning of the various statutes enacted by the Congress when they are read together, as they must be. The action taken today will give to Reserve officers an exemption that is in terms denied all Regular Army officers

who were retired for disability, except the ones who were disabled in actual combat, or by an explosion of an instrument of war in line of duty.[9]

I would grant the defendant's motion for summary judgment and deny the plaintiff's similar motion.

---

8. See footnote 6.

9. Section 212(b) of the Economy Act, 54 Stat. 761.