Leo J. BROYDERICK et al.

v.

The UNITED STATES.

John A. BROWNELL et al.

v.

The UNITED STATES.

Paul F. FOSTER

v.

The UNITED STATES.

Nos. 491–56, 505–56, 506–56.

United States Court of Claims.

Dec. 4, 1957.

Thomas H. King, Washington, D. C., for plaintiffs. F. O. Willenbucher, Washington, D. C., was on the briefs.

Sondra K. Slade, Washington, D. C., with whom was Asst. Atty. Gen., George Cochran Doub, for defendant.

MADDEN, Judge.

The plaintiffs in all three cases are retired officers of the United States Naval Reserve. They were retired pursuant to section 6 of the Act of February 21, 1946, 60 Stat. 26, 27, 34 U.S.C.A. § 410b* each of them having had more than 20 years of active service. Their retired pay was computed on the formula prescribed in section 7 of the same statute, 34 U.S.C.A. § 410c.** The formula was the number of years service which the officer was entitled to count in the computation of his active duty pay multiplied by 2½ percent of the active duty pay of the officer's retired rank.

Section 431 of the Officer Personnel Act of 1947, 61 Stat. 795, 881, 34 U.S.C.A. § 410q † provided:

"Officers of the Navy, the Marine Corps, and the Reserve components thereof, heretofore or hereafter retired under any provision of law shall have their retired pay computed on the basis of the rates of pay which are now or may be hereafter provided by law for officers on the active list."

The rates of pay for officers on the active list were increased by the Career Compensation Act of 1949, 63 Stat. 802, 37 U.S.C.A. §§ 231–322. These new pay rates have not been used in computing the plaintiffs' retired pay, and that is the reason for their suit. As to some of the plaintiffs, other and additional claims are asserted, which will be discussed in their turn.

The Government's asserted reason for denying to the plaintiffs the increased rates of pay which they claim, is that the same Career Compensation Act of 1949, which increased the rates of pay for officers on the active list, made other provision for officers retired before that statute was passed. The Government points to section 511 of that Act, 37 U.S.C.A. § 311, which says:

"On and after the effective date of this section (1) members of the uniformed services heretofore retired for reasons other than for physical disability, * * * shall be entitled to receive retired pay, * * * in the amount whichever is the greater, computed by one of the following methods: (a) The * * * retired pay * * * in the amount authorized for such members and former members by provisions of law in effect on the day immediately preceding the date of enactment of this Act, or (b) [2½ percent of the active duty pay which the retired officer would receive if he were serving on active duty, multiplied by the number of years of active service creditable to him.]"

Officers, such as the plaintiffs, retired, as we have said, under the Act of February 21, 1946, were entitled under section 7 of that Act to use as a multiplier all the years of service for which they were entitled to credit in the computation of their pay while on active duty. The plaintiffs, while on active duty, were entitled to count all the years of their service, active and inactive, for longevity purposes in determining their active duty pay. The plaintiffs were, therefore, at the time of the enactment of the Career Compensation Act, permitted to use and were in fact using, all their years of service, inactive as well as active, in computing their retired pay.

Section 511(b) of the Career Compensation Act denied to those already retired officers who elected to be paid under that section the right to continue to count their years of inactive service in computing their retired pay. Since prac-

* Now 10 U.S.C.A. § 6323.

** Now 10 U.S.C.A. §§ 6151, 6325, 6328, 6404.

† Now 10 U.S.C.A. § 6149.

-tically all of the plaintiffs had a considerable number of years of inactive service, in addition to their many years of active service, most of them did not, of course, elect to have their retired pay computed under section 511(b). That choice put them under 511(a). The Government says that they have received all that they were entitled to under 511(a).

Section 511(b), while reducing the multiplier of years of service by eliminating inactive service, plainly permits the new and increased rates of active duty pay to be used as a multiplier. The plaintiffs contend that section 511(a) also permits the use of the new and increased rates of active duty pay to be used as a multiplier.

Section 511(a), as we have noted, gives to those already retired officers who elected to be paid under its provisions, retired pay "in the amount authorized" for them "by provisions of law in effect" on the day before the enactment of the Act of which section 511 was a part. The Government says that the election tendered by section 511 to the already retired officers was (1) keep on getting the retired pay that you were already getting or (2) have your retired pay recomputed on the basis of the new and higher active duty pay rates, but eliminating your years of inactive service, if any, as a factor in the computation.

■ If the plaintiffs are right in saying that they may still count all the years that they were already counting under the 1946 Act, and also use the new and increased active duty pay as a multiplier, there is no election between 511(a) and 511(b). If an officer's service was all active service, the election would result in a tie, for he would get the same retired pay under either provision. If he had any inactive service at all, he would elect (a). The Government says that Congress could not have intended to provide for a completely illusory election, and we agree.

The basis for the plaintiffs' argument is section 431 of the Officer Personnel Act of 1947 which we have already quoted. It said that retired Naval officers should have their retired pay computed on the basis of the rates of pay "which are now or [which] may be hereafter provided by law for officers on the active list." If this provision had remained unaffected by subsequent legislation, the plaintiffs could still have included their years of inactive service in their longevity multiplier and their retired pay would have increased whenever Congress increased the active duty pay of Naval officers. The plaintiffs say that when section 511(a) of the Career Compensation Act speaks of "provisions of law in effect" at the time of its enactment, it speaks of, among others, the provisions of section 431 of the 1947 Act. The plaintiffs' argument has some plausibility, but we think it encounters an irremovable obstacle in the text and obvious purpose of section 511 taken as a whole. We think that Congress, in section 511 changed the law and eliminated the right, which some retired officers had under the 1947 Act, to count all their service, active and inactive, and also measure their retired pay according to new and increased rates of active duty pay. The legislative history supports our conclusion. See H.Rep. 779, 81st Cong., 1st Sess., p. 24.

We conclude that none of the plaintiffs in the three cases involved herein are entitled to recover on the basis of their claims for increased retired pay under section 511 of the Career Compensation Act of 1949. The petitions of all plaintiffs in case No. 491–56 will be dismissed with the exception of that of plaintiff No. 11, John D. Small, in connection with his claim under section 212 of the Economy Act of 1932, to be dealt with hereinafter.

### Section 212 of the Economy Act of 1932

■ John D. Small, one of the plaintiffs in No. 491–56 was, after his retirement, employed by the United States in a civilian capacity with compensation exceeding $3,000 per annum. The period of such employment was November 16, 1950, to January 20, 1953.

Section 212 of the Economy Act of 1932, 47 Stat. 406, 5 U.S.C.A. § 59a

provides, in effect, that one cannot draw both the retired pay of a commissioned officer and the pay of a civilian employee of the Government if the combined pay amounts to more than $3,000 per annum. On the basis of this statute, Small was denied his retired pay during the period of his civilian employment, and his claim for it is included in the present suit.

We had a comparable problem in Tanner v. United States, 125 F.Supp. 240, 129 Ct.Cl. 792, certiorari denied 350 U.S. 842, 76 S.Ct. 83, 100 L.Ed. 751. We applied section 1(b) of the Act of July 1, 1947, 61 Stat. 238, 10 U.S.C. [1946 ed. Supp. I] section 371(b), which read:

> "No existing law shall be construed to prevent any member of the Officers' Reserve Corps or the Enlisted Reserve Corps from accepting employment in any civil branch of the public service nor from receiving the pay incident to such employment in addition to any pay and allowances to which he may be entitled under the laws relating to the Officers' Reserve Corps and Enlisted Reserve Corps, * * *."

The Officers' Reserve Corps named in the above statute was the Officers' Reserve Corps of the Army. Accordingly, Small, who was not a member of the [Army] Officers Reserve Corps was not relieved from the restrictions of the Economy Act by virtue of the provisions of section 371(b).

Section 4 of the Naval Reserve Act of 1938, 52 Stat. 1176, similar in text to the statute just quoted, but applicable to members of the Naval Reserve, exempted from the Economy Act only pay and allowances to which the officer "may be entitled under the provisions of this Act." Small does not receive his retired pay pursuant to the Naval Reserve Act of 1938, but pursuant to the Act of February 21, 1946, 60 Stat. 26. He is not, therefore, covered by the exempting language of the 1938 Act. In Tanner v. United States, supra, there is a consider-

able discussion of the limited coverage of section 4 of the Naval Reserve Act of 1938.

In the Armed Forces Reserve Act of 1952, 66 Stat. 481, the language of the 1947 Act exempting members of the Officers' Reserve Corps [Army] from the dual compensation restriction, was broadened by section 804(a), effective January 1, 1953, 10 U.S.C.A. §§ 371, 371b,†† to exempt any "members of the reserve components of the Armed Forces." The Government concedes that Small was entitled to the benefit of that statute from the effective date of section 804(a), January 1, 1953. He is not entitled to recover for the period of his civilian employment prior to January 1, 1953. He is entitled to recover his retired pay, properly computed, for the period January 1 to January 20, 1953.

### Service as Midshipmen

The plaintiffs in Nos. 505-56 and 506-56 seek to have included in the computation of their retired pay the periods of their service as midshipmen under appointments made prior to March 4, 1913. They were retired under the Act of February 21, 1946, 60 Stat. 26, 27, under which they were entitled to count the number of years "for which entitled to credit in the computation of their pay while on active duty" in computing their retired pay.

At the time of their retirements, plaintiffs were paid active duty pay computed under the provisions of the Pay Readjustment Act of June 16, 1942, 56 Stat. 359.* The Navy did not give them longevity credit for periods spent as midshipmen in the computation of their active duty pay or in the computation of their retired pay. Under the eleventh paragraph of section 1 of the 1942 Act, regular officers of the Navy were entitled to count their midshipmen service in computing their active duty pay if such officers had been in the service on June 30, 1922.[1] Under Section 14 of the 1942 Act, reservists on active duty were

---

†† Now 5 U.S.C.A. § 30r.
* Now 37 U.S.C.A. § 232 et seq.

1. Section 1 of the 1942 Act provides in part as follows: " * * * for officers

entitled to receive the same pay as regulars and this would, of course, bring reservists in service on June 30, 1922 within the provisions of the eleventh paragraph of Section 1 of the 1942 Act, noted above.

All of the plaintiffs in cases Nos. 505–56 and 506–56 were serving as commissioned officers in the Regular Navy on June 30, 1922. At the time of their retirement, they were serving as commissioned officers in the Naval Reserve. All of them had served as midshipmen in the Navy under appointments made prior to March 4, 1913. They now contend that under a saving provision contained in the Act of March 4, 1913, 37 Stat. 891, and under a further saving provision contained in the Act of June 10, 1922, 42 Stat. 625, both their active duty pay [2] as reserve commissioned officers and their retired pay should have included longevity credit reflecting their service as midshipmen. The statutory basis of their claim is as follows: The Act of March 3, 1883, 22 Stat. 472, 473 provided:

" * * * And all officers of the Navy shall be credited with the actual time they may have served as officers or enlisted men in the regular or volunteer Army or Navy, or both, and shall receive all the benefits of such actual service in all respects in the same manner as if all said service had been continuous and in the regular Navy in the lowest grade having graduated pay held by such officer since last entering the service: * * *"

In Baker v. United States, 125 U.S. 646, 8 S.Ct. 1022, 31 L.Ed. 824, affirming 23 Ct.Cl. 181, and in United States v. Cook, 128 U.S. 254, 9 S.Ct. 108, 32 L.Ed. 464, it was held that midshipmen in the Naval Academy were serving as officers in the

Navy and that their service as midshipmen should therefore be counted for the benefit of computing longevity pay under the 1883 statute.

The Act of March 4, 1913,[**] supra, repealed the above statute insofar as it related to the counting of midshipmen service of all midshipmen appointed to the Naval Academy *after* the effective date of that act:

"Hereafter the service of a midshipman at the United States Naval Academy, or that of a cadet at the United States Military Academy, *who may hereafter be appointed* to the United States Naval Academy, or the United States Military Academy, shall not be counted in computing for any purpose the length of service of any officer in the Navy * * *." [Italics supplied.]

The Act of June 10, 1922, 42 Stat. 625, 627, provided in part:

"For officers appointed on and after July 1, 1922, no service shall be counted for purposes of pay except active commissioned service under a Federal appointment and commissioned service in the National Guard when called out by order of the President. *For officers in the service on June 30, 1922, there shall be included in the computation all service which is now counted in computing longevity pay, * * *.*"

Defendant contends that although plaintiffs served as midshipmen in the Naval Academy prior to March 4, 1913, and were serving as commissioned officers in the Regular Navy on June 30, 1922, they may not count the time spent as midshipmen for longevity pay purposes because they did not, *after* June 30, 1922, remain *continuously* in the service to the date of their retirement.[3] Defend-

---

in the service on June 30, 1922, there shall be included in the computation all service which was then counted in computing longevity pay, * * *."

2. Plaintiffs make no claim for increased active duty pay since such claims would be barred by the Statute of Limitations.

[**] Now 10 U.S.C.A. § 6116.

3. All of the plaintiffs involved in this claim resigned their commissions in the Regular Navy subsequent to June 30, 1922, and, after breaks in service ranging from one day to 17 years, accepted commissions in the Naval Reserve in which they served for extended periods of time prior to retirement. The lapses of time between the end of the regular

ant does not contend that the 1922 statute expressly requires that an officer in the service on June 30, 1922, must serve continuously during the period thereafter for which he seeks credit for midshipman service, but defendant says that the statute was construed to so hold in Hoffman v. United States, 66 Ct.Cl. 452. In the Hoffman case the plaintiff had served as a midshipman in the Naval Academy prior to March 4, 1913 and served continuously in various commissioned grades until July 28, 1923, when he resigned his commission. Nearly four years later, it was represented to Congress that plaintiff had incurred physical disability in line of duty in his commissioned naval service, and in consequence thereof Congress enacted a special bill for his relief on March 3, 1927, authorizing the President to appoint plaintiff a lieutenant commander in the Navy and to place him on the retired list of the Navy if a Naval retiring board should first find that plaintiff had in fact incurred physical disability incident to his active service in line of duty. A retiring board was convened at once and so found. The findings were approved by the President and plaintiff was appointed a lieutenant commander in the Navy on March 17, 1927, and, on that same day, he was placed on the retired list of the Navy in that rank and grade. In computing his retired pay, the Navy did not give to plaintiff the benefit of his years of service as a midshipman and plaintiff sued to recover the additional retired pay he would have received had he been given such credit. Plaintiff relied on the 1883 Act, supra, the Act of March 4, 1913, supra, and the Act of June 10, 1922, supra. The court held that on the authority of the decisions of the Court of Claims in Cronin v. United States, 62 Ct.Cl. 20, and Guilmette v. United States, 49 Ct.Cl. 188, plaintiff did

not come within the second sentence of the applicable provision of the June 10, 1922 Act ("For officers in the service on June 30, 1922, there shall be included * * *"), stating, 66 Ct.Cl. at page 456:

"Under the authority of these cases, the plaintiff by his resignation of July 28, 1923, surrendered whatever right he had to count his service while a midshipman, and being an officer appointed after July 1, 1922, he is only entitled under the act to count active commissioned service for longevity-pay purposes."

We are of the opinion that the decisions in Cronin and Guilmette were not adequate authority for the holding of the court in Hoffman. In neither Cronin or Guilmette was the claim one to count midshipmen service for the purpose of either active duty or retired pay under the Act of June 10, 1922. In those cases the plaintiffs were seeking to recover increased active duty pay under the Act of March 3, 1899, 30 Stat. 1004, 1007, which provided in pertinent part as follows:

" * * * that all officers, including warrant officers, who have been or may be appointed to the Navy *from civil life* shall, on the date of appointment, be credited, for computing their pay, with five years' service." [Italics supplied.]

In both cases plaintiffs had resigned from the Navy [4] and the court found that they had reentered civil life with no intention of thereafter seeking a new appointment to the military service. When they later accepted second appointments in the Navy and served on active duty in such appointments, they sought to have the 5 year credit provided for in the 1899 Act. The court held in both cases that because plaintiffs had been

service and the beginning of reserve service for each plaintiff was as follows: Brownell: 1 month; Huntoon: 1 day; Lowry: 13 years, plus; Nielson: 7 years, plus; Staley: 3 months plus, and a second break between the first reserve commissioned service and a second tour of reserve duty, of 12 years plus; Wills:

14 years; Wright: 17 years, plus; Foster: 4 months.

4. Guilmette resigned October 25, 1909 and accepted his new appointment on November 11, 1909. Cronin resigned on July 12, 1912, and accepted his new appointment August 1, 1912.

completely separated from the public service with no intention at that time to reenter, the second appointments were "from civil life" within the meaning of the 1899 statute and plaintiffs were entitled to the 5 year longevity credit granted by that statute in computing their pay.

In two other cases cited to the court by plaintiff's counsel in the Hoffman case, the court denied similar claims for the 5 year credit. In Stirling v. United States, 48 Ct.Cl. 386, plaintiff resigned in 1908 while a midshipman at the Naval Academy. Two months after his resignation, Congress authorized the President to appoint Stirling as an ensign in the Navy and he was so appointed. He sought and was denied credit for longevity pay purposes for the 5 years provided for in the 1899 Act, and brought suit therefor claiming that he had been appointed to the service "from civil life". The court held that under the facts in the case Stirling had not been appointed "from civil life" within the meaning of the 1899 Act.

In Barber v. United States, 50 Ct.Cl. 250, plaintiff resigned from the Naval Academy, just prior to graduation, at the request of the Navy and against his will. A few weeks later he received an appointment as an assistant paymaster in the Navy and he claimed he was appointed "from civil life" within the meaning of the 1899 Act and was therefore entitled to the 5 years credit in computing his active duty pay. The court observed that although the statute's language "from civil life" was apparently clear, it required some reasonable construction in the light of the obvious purpose of the law. The court stated that the purpose of the 1899 statute was to induce men then in civil life, most if not all of whom had never been in the military service, to enter the service without the disadvantage occasioned by the allowance under the 1883 Act to graduates of the Naval Academy of their time spent there as naval service for longevity pay purposes; that it was not intended either to induce or allow men to get out of the

service for a short time and then take advantage of it. The court stated at page 256:

> "We do not wish to be understood as holding that a naval officer may not in good faith resign from the service and reenter again and take advantage of this statute, but we believe such separation from the service should be so substantial as to bring the case within the spirit of the law [the 1899 Act]."

The court noted the holding in the Guilmette case, supra, allowing recovery under the 1899 statute, after a break in service of a few days, and stated that the court went to the full limit of liberality in the construction of the statute in that case and should go no further. The court then held that since it was apparent that Barber had not wished to resign from the Academy, and had done his best to get back into the service after his resignation was demanded, his subsequent appointment was not one "from civil life" within the spirit of the 1899 statute. In support of its interpretation of the intent of Congress in enacting the 1899 statute as an intent to give to persons entering the service *from civil life* the same pay advantages enjoyed by those who had attended the military academies, the court noted that both the 1883 statute permitting the counting of midshipmen service for longevity pay purposes, and the 1899 statute granting a 5 year longevity credit to those appointed from civil life, were repealed in 1913 insofar as they affected appointments made thereafter. 37 Stat. 891 (midshipman service credit); 37 Stat. 594, sec. 6 (5 year longevity credit).

We are of the opinion that the decisions of the court in the four cases discussed above involving the right of the respective plaintiffs to the 5 year longevity credit provided for in the 1899 Act, were intended to effectuate the intent of Congress to encourage men to accept service appointments *from civil life* by placing such men on a basis of pay equality with men who had served as midshipmen in the service academies. In

all four cases there were so-called short breaks in service between the first appointments and the second appointments claimed to have been from "civil life". The decisions related only to the 1899 Act and did not purport to interpret or construe the 1883 Act, the Act of March 4, 1913, or the Act of June 10, 1922. We do not believe that any of those cases was apposite in connection with the issue raised in the Hoffman case which we think should have been decided on the basis of the meaning and intent of the 1922 Act without reference to the cases construing the 1899 statute.

Turning to the language of the Act of June 10, 1922, we see nothing therein to justify the conclusion that Congress intended the benefits claimed therein to inure only to those officers in service on June 30, 1922, who remained continuously in the service thereafter. In fact, the 1883 act which first granted the right to count such midshipmen service for longevity pay purposes, belies any such interpretation as will be seen from a reading of the following:

"* * * And all officers of the Navy shall be credited with the actual time they may have served as officers or enlisted men in the regular or volunteer Army or Navy, or both, and shall receive all the benefits of such actual service * * * *as if all said service had been continuous* and in the regular Navy * * * "

See Baker v. United States, supra. We think that only clear language in the statute requiring continuous service after June 30, 1922, would justify the holding urged by defendant, and we find no such language. The allowance of additional service credit for pay purposes to officers who were in the service before a particular date, without requiring continuous service after that date, is not unusual. We note particularly the last paragraph of section 15 of the Pay Readjustment Act of 1942, 37 U.S.C.A. § 115, supra, which provides that the retired pay of officers who served in the armed forces prior to November 12, 1918,

should be entitled to retired pay at the rate of 75 percent of the active duty pay of such officer at the time of retirement. We think that Congress in passing the Act of March 4, 1913, and the Act of June 10, 1922, intended to permit officers whose midshipmen service was prior to March 4, 1913, to continue to have the benefit of the longevity credit granted to them in the 1883 Act, and that a break in service subsequent to June 30, 1922, did not deprive them of such credit under that act or under any subsequent legislation.

We hold that all the plaintiffs in cases No. 505–56 and No. 506–56 should have received credit for their midshipmen service in the computation of their retired pay and they are entitled to judgments representing the amounts each have lost because they were deprived of such credit.

In the case of Frank C. Huntoon and Carroll Q. Wright, Jr., in case No. 505–56, defendant has interposed counterclaims for amounts representing overpayments of retired pay resulting from an erroneous inclusion of inactive service in the computation thereof under section 511(b) of the Career Compensation Act. In view of our conclusions with regard to the nonapplicability of Section 511 of the Career Compensation Act of 1949 to these two plaintiffs, defendant is entitled to judgment on its counterclaims to the extent that such counterclaims exceed the amount of judgment due Huntoon and Wright by virtue of the recomputation of their retired pay to give credit for their midshipmen service prior to March 4, 1913.

The petition as to all plaintiffs in case No. 491–56, except that of John D. Small, will be dismissed. John D. Small is entitled to recover in accordance with this opinion for pay withheld from January 1, 1953 to January 20, 1953. All the plaintiffs in case No. 505–56 and case No. 506–56 are entitled to recover the retired pay denied them by virtue of the defendant's failure to include their midshipmen service in the computation thereof. The petitions in cases No. 505–

56 and No. 506–56 will be dismissed as to the claims for additional retired pay under the provisions of section 511 of the Career Compensation Act of 1949.

In all three cases plaintiffs' motions for summary judgment and defendant's motions to dismiss are granted in part and denied in part in conformity with the above.

Defendant is entitled to judgment on its counterclaims against Frank C. Huntoon and Carroll Q. Wright, Jr., in case No. 505–56.

The amount of recovery for each plaintiff held entitled to recover and the amount of recovery for the defendant on its two counterclaims, if any, will be determined pursuant to Rule 38(c), 28 U. .S.C.A.

It is so ordered.

FAHY, Circuit Judge, sitting by designation; JONES, Chief Judge, and WHITAKER and LITTLETON, Judges, concur.