Per Curiam :
This case was referred pursuant to Buie 45 to Paul H. McMurray, a trial commissioner of this court, with directions to make findings of fact and his recommendation for conclusion of law. The commissioner has done so in a report, filed March 29, 1963, hereinafter set forth; the report recommends that plaintiff be held not entitled to recovery and that the petition be dismissed. On April 10, 1963, plaintiff filed a notice of intention to except, but he failed to file any exceptions or brief either within 45 days (as required by Buie 46) or thereafter. No extensions have been granted and the time has expired. Under Buie 46 the court is now free to adopt the commissioner’s report without further argument.
*754 Tbe court is in agreement with the findings and recommended conclusion of the trial commissioner and adopts them as the basis for its judgment in this case. As the court understands the section of the commissioner’s opinion under the heading “B. World War I Emergencj Officers”, the opinion does not hold that the legislation and regulations pertaining to World War I emergency officers apply directly to the present case but rather holds that the test laid down under that legislation and regulation for determining whether a disease or injury directly resulted from the performance of military or naval duty is comparable to the test properly applicable under Section 212 (b) of the Economy Act to determine whether an officer was “retired for disability incurred in combat with an enemy of the United States or for disabilities resulting from an explosion of an instrumentality of war in line of duty * * With this understanding, the court agrees with the commissioner’s opinion and likewise adopts it as the basis for its judgment. Accordingly, plaintiff is not entitled to recover and judgment is entered to that effect. His petition is dismissed.
OPINION OP THE COMMISSIONER
This is a claim for retirement pay for the period from May 23,1946, to May 2,1951, inclusive, during which period plaintiff was employed by the United States as an attorney at a salary in excess of $3,000 per annum. The primary issue involved in this litigation is whether Section 212 of the Economy Act of 1932,47 Stat. 382,406, as amended; 5 U.S.C. 59a, precludes plaintiff from receiving disability retirement pay for the period during which he was a civilian employee of the United States at a salary which, when added to the retirement pay, is in excess of $3,000 per annum.
Other issues are also involved, namely, (1) did the acceptance and negotiation by the plaintiff of a check for $4,885.69 constitute a release by the plaintiff of the right to recover any additional amounts of retirement pay; and (2) is plaintiff entitled to receive both his retirement pay as a Naval Beserve Officer and his salary as a Federal employee under the Act of July 1, 1947, 61 Stat. 238, 239, which exempts Army Beserve Officers from the dual compensation pro *755 visions of the Economy Act of 1932 (sometimes called the Dual Compensation Statute).
The proposed disposition of the primary issue presented in this claim appears to make it unnecessary to consider all of the issues mentioned by the parties. The dual compensation provisions of the Economy Act placed a restriction on employees of the Federal Government whereby no retired officer could receive both his retirement pay and a Federal salary at the same time, when the total amount exceeded $3,000 per annum, unless disability was incurred in combat or resulted from an explosion of an instrumentality of war. Plaintiff bases his claim on the theory that his ulcer condition meets the requirement of the statute with respect to its origin. The facts are deemed to be adequately set out in the findings which are based upon the record.
Plaintiff has been retired, effective May 23, 1946, the day following the date of his separation from military service, and is currently in receipt of disability retirement pay. His retirement is predicated upon findings of the Board for Correction of Naval Becords with respect to both the origin and extent of his ulcer condition. In the first determination no specific finding was made by the Correction Board concerning the relationship between the ulcer condition and combat service. Plaintiff’s initial claim was not predicated on such origin for the ulcer condition. On a subsequent occasion, the Board for the Correction of Naval Becords specifically held that his disability was not incurred in combat nor did it result from an explosion of an instrumentality of war in line of duty.
A. THE ECONOMY ACT OE 1932
Section 212 of the Economy Act of June 30,1932, 47 Stat. 382,406, as amended 54 Stat. 760, 761, 5 U.S.C. 59a, provides, in pertinent part, as follows:
(a) After the date of the enactment of this Act, no person holding a civilian office or position, appointive or elective, under the United States Government or the municipal government of the District of Columbia or under any corporation, the majority of the stock of which is owned by the United States, shall be entitled, during the period of such incumbency, to retired pay from the United States for or on account of services as *756 a commissioned officer in any of the services mentioned in the Pay Adjustment Act of 1922 [U.S.C., title 37], at a rate in excess of an amount which when combined with the annual rate of compensation from such civilian office or position, makes the total rate from both sources more than $3,000; and when the retired pay amounts to or exceeds the rate of $3,000 per annum such person shall be entitled to the pay of the civilian office or position or the retired pay, whichever he may elect. As used in this section, the term “retired pay” shall be construed to include credits for all service that lawfully may enter into the computation thereof.
(b) This section shall not apply to any person whose retired pay, plus civilian pay, amounts to less than $3,000: Provided, That this section shall not apply to regular or emergency commissioned officers retired for disability incurred in combat with an enemy of the United States or for disabilities resulting from an explosion of an instrumentality of war in line of duty during an enlistment or employment as provided in Veterans Regulation Number 1 (a), part I, paragraph I. [Italics supplied.] [1]
Plaintiff contends he is not subject to the provisions of Section 212 by reason of the proviso excepting persons retired for “disability incurred in combat with an enemy of the United States.” It would appear, however, that plaintiff’s disability does not come within the meaning of the above proviso. The problem is discussed in Kimbrough and Glen, American Law of Veterans, footnote 11 (in part), pp. 158-9:
Disability resulting from mistreatment and punishment suffered while the officer was a prisoner of war was not incurred in combat with an enemy within the provisions of the above statute. Op. JAGN 1951/17. 11 July 1951,1 Dig. Op. Retirement § 71.3. However, a disability which has its inception during combat is combat incurred for the purposes of the statute even though it does not manifest itself or become disabling until the officer concerned has become a prisoner of war. JAGA 1952/4390. 13 May 1952, 2 Dig. Op. Retirement § 71.8.
*757 One developing severe migraine headaches as a result of long hours, lack of rest and proper diet, while serving in combat, is not qualified under the exception for a disability incurred in combat in the absence of showing of both engagement in combat with the enemy and direct causal relationship between the combat and the disability. * * * [Emphasis supplied.]
The italicized language in the preceding paragraph appears to be a correct statement of the rule of law to be applied in this case, analogizing the situation in which plaintiff herein has failed to show any “direct causal relationship between the combat and the disability.” See also, Ancker v. United States, 116 Ct. Cl. 384 (1950); and Campbell v. United States, 132 Ct. Cl. 122, 132 F. Supp. 225 (1955), on the problem of a “disability resulting from an explosion of an instrumentality of war.” In the Campbell case recovery was allowed on the basis of facts and circumstances which are clearly distinguishable from the situation which exists in the instant case.
B. WORLD WAR I EMERGENCY OEEICERS
The Emergency Officers’ Retirement Act of May 24, 1928, commonly referred to as the Tyson-Fitzgerald Act, 45 Stat. 735, provided that:
* * * all persons who have served as officers of the Army, Navy, or Marine Corps of the United States during the World War, other than as officers of the Kegular Army, Navy, or Marine Corps who during such service have incurred physical disability in line of duty, and who have been, or may hereafter, within one year, be, rated in accordance with law at not less than 30 per centum permanent disability by the United States Veterans’ Bureau for disability resulting directly from such war service, shall, from date of receipt of application by the Director of the United States Veterans’ Bureau, be placed upon, and thereafter continued on, separate retired lists, hereby created as part of the Army, Navy, and Marine Corps of the United States, to be known as the emergency officers’ retired list * * * and shall receive from date of receipt of their application retired pay at the rate of 75 per centum of the pay to which they were entitled at the time of their discharge from their commissioned service * * * [Emphasis supplied.]
*758 Section 17 of the Economy Act of March 20,1933, 48 Stat. 8, at page 10, repealed the above-quoted statute. (See McGrath v. United States, 157 Ct. Cl. 791, 303 F. 2d 943 (1962)). Section 10 of the same act, however, continued the retirement pay of officers receiving it under the Act of May 24, 1928, under certain conditions. Section 10 of the Act of March 20, 1933 (48 Stat. 10), provides:
* * * any person who served as an officer of the Army, Navy, or Marine Corps of the United States during the World War, other than as an officer of the Regular Army, Navy, or Marine Corps during the World War, who made valid application for retirement under the provisions of [the Tyson-Fitzgerald Act], and who prior to the passage of this Act has been granted retirement with pay, shall be entitled to continue to receive retirement pay at the monthly rate now being paid him if the disability for which he has been retired resulted from disease or injury or aggravation of a preexisting disease or injury incurred i/n line of duty during such service: * * * Provided, That the disease or injury or aggravation of the disease or injury directly resulted from the performance of military or naval duty, and that such person otherwise meets the requirements of the regulations which may be issued under the provisions of this Act. [Emphasis supplied.]
On March 31, 1933, the President, acting under the authority of Section 10 (above) promulgated Veterans Regulation No. 5, E.O. 6093. The regulation was in terms identical with Section 10 above, except that a proviso was included as follows:
* * * Provided further, That the disease or injury * * * directly resulted from the performance of military * * * duty and that the causative factor therefor is shown to hme arisen out of the performance of duty during such service. [The italicized portion is that added to the proviso by Veterans Regulation No. 5.]
As a result of the enactment of Section 10 of the Act of March 20, 1933, and the Veterans Regulation issued thereunder, many emergency officers were found to be no longer entitled to retired pay. (See, e.g., McGrath v. United States, supra.)
*759 C. RESERVE OEEICER EXEMPTION EROM THE DUAL COMPENSATION STATUTE
In Tanner v. United States, 129 Ct. Cl. 792, 125 F. Supp. 240, cert. denied, 350 U.S. 842 (1955), decided November 2, 1954, this court held that Section 1(b) of the Act of July 1, 1947, 61 Stat. 238, 239, exempts Army Reserve Officers, retired for longevity, from the provisions of the Dual Compensation Statute. In Watman v. United States, 152 Ct. Cl. 769, 288 F. 2d 472 (1961), the exemption was extended to Army Reserve Officers retired for disability.
The situation with respect to Naval Reserve Officers is somewhat different. Section 4 of the Naval Reserve Act of 1938, 52 Stat. 1175, is similar in text to the Act of July 1, 1947, supra, but it exempted from the Economy Act only pay and allowances to which the officer “may be entitled under the provisions of this Act.” Plaintiff herein does not receive his retired pay pursuant to the Naval Reserve Act of 1938, but pursuant to Section 4 of the Naval Aviation Personnel Act of 1940, 54 Stat. 864. He is not, therefore, covered by the exempting language of the 1938 Act. (See Broyderick v. United States, 140 Ct. Cl. 427, 432, 156 F. Supp. 947, 950 (1957)).
In the Armed Forces Reserve Act of 1952, 66 Stat. 481, the language of the 1947 Act exempting members of the Officers’ Reserve Corps (Army) from the dual compensation restriction, was broadened by Section 804(a), effective January 1, 1953, to exempt “any member of the reserve components of the Armed Forces.” Plaintiff’s claim is limited to the years 1946-1951, during which time Naval Reserve Officers receiving disability retirement pay were not exempted from Section 212 of the Economy Act of 1932.
It thus appears that for the entire period of his claim plaintiff is subject to the dual compensation provisions of the Economy Act of 1932. Since he has failed to show a causal relationship between his disability and “combat with an enemy of the United States or * * * an explosion of an instrumentality of war in line of duty * * *” he does not meet the requirements set forth in the exception set out in the statute.
*760 1. Plaintiff received an appointment as an ensign, United States Naval Reserve, on April 9, 1942, and entered upon active duty April 16,1912. He was advanced to the rank of lieutenant, and on May 22, 1916, was released from active duty not by reason of physical disability.
2. On May 21,1952, plaintiff filed a petition in this Court claiming that, because his ulcer condition was an incident of his military service, he should have been retired by reason of physical disability; and that, therefore, he was entitled to the retired pay and allowances provided by law for a lieutenant of the Regular Navy with over 1 years’ service beginning with May 22, 1916. Pursuant to order of this court dated April 8,1955, proceedings herein were suspended in order that plaintiff could seek relief before the Board for Correction of Naval Records. Pursuant to a hearing held on March 18, 1957, the Board for Correction of Naval Records found that plaintiff was incapacitated for active service on May 22,1916, the date of his release from active duty, by reason of ulcer, duodenum, chronic; that his incapacity was the result of an incident of the service, having been incurred subsequent to April 16,1912. The Board recommended that Lieutenant Kennedy be placed on the disability retired list, and he was retired effective May 23, 1916. The Board did not make a specific finding at that time as to whether plaintiff’s disability was incurred (1) in combat with an enemy of the United States, or (2) as a result of an explosion of an instrumentality of war, in line of duty.
3. The Navy Finance Center, in computing the amount of retirement pay due plaintiff as a result of the correction of his military records by the Board for Correction of Naval Records in 1957, discovered that plaintiff had been employed as a civilian by the Federal Government as an attorney with the Veterans Administration and as an attorney with the National Labor Relations Board. In these positions he received a salary in excess of $3,000 per annum, when combined with the retirement pay, during the period from May 23, 1916, through May 2, 1951. Plaintiff did not receive retirement pay for that period because of the provisions of *761 Section 212 (a) of the Economy Act of 1932,47 Stat. 382,406, commonly referred to as the Dual Compensation Statute.
4. On November 8, 1957, the Navy Finance Center sent plaintiff a check for $4,885.69 covering the period May 3, 1951, through April 7, 1957. Plaintiff was advised at that time that the check should not be negotiated if he believed additional amounts were due him. By letters addressed to the Navy Finance Center, dated January 22 and February 10, 1958, plaintiff requested authority to negotiate the check without having to release his claim for the excess amount involved. The Navy Finance Center, by letter dated February 12, 1958, expressly informed plaintiff that the negotiation of the check would preclude any further claim, and that the Finance Center had requested an opinion from the Comptroller General as to whether reserve members who had retired on the basis of a determination made by the Board for Correction of Naval Kecords were exempt from Section 212 of the Economy Act of 1932 subsequent to January 1,1953.
After considerable correspondence between plaintiff and the Navy Finance Center, a letter was addressed to plaintiff under date of April 14,1958, quoted, in part, as follows:
A decision has been requested from the Comptroller General as to whether or not U.S. Naval Reserve officers retired as the result of action by the Board for Correction of Naval Records are exempt from the Economy Act.
Since Mr. Kennedy’s letters on file in the Navy Finance Center can be used as a basis for any additional claim if the Comptroller General rules favorably, the check which he now has in his possession can be negotiated in the usual manner.
5. Plaintiff negotiated the check in late April or early May of 1958.
6. On May 1, 1959, the Comptroller General disallowed plaintiff’s claim for retroactive disability retired pay alleged to be due for the period May 23, 1946, through May 2,1951, on the grounds (1) that plaintiff had released the United States from any further claim by the acceptance of the first settlement (check for $4,885.69) and (2) that payment was precluded by virtue of the Dual Compensation Statute.
7. Proceedings were again suspended in this court for the *762 purpose of allowing tbe plaintiff an opportunity to petition the Board for Correction of Naval Records to correct his records to show that the disability for which he was retired was incurred in combat with an enemy of the United States. Such a finding would have specifically exempted plaintiff from the operation of the Dual Compensation Statute. The Board denied plaintiff’s petition on the ground that he had failed to sustain the burden of showing that his disability was incurred in combat or resulted from an explosion of an instrumentality of war in line of duty.
8. Plaintiff’s medical records reveal that his ulcer condition was diagnosed as early as April 1943 with a history of prior ulcer symptoms. On April 22, 1943, a positive diagnosis of ulcer, duodenum, was made, probable duration “permanent.”
9. The duodenum is the first portion of the small intestine which is immediately adjacent to the outlet of the stomach and functions as a digestive organ, allowing the mixing of food with digestive secretion from nearby organs, such as the pancreas, liver, and gall bladder. The duodenum consists of (1) a lining which is known as the mucosa, (2) the next layer, known as the submucosa, (3) the muscularis, and (4) the external layer, called the serosa. A break in the mucosa lining may result in the development of a peptic ulcer. The pain experienced in ulcer cases is due mainly to the irritation of the surface below the mucosa from hydrochloric acid and other digestive juices formed in the duodenum. The causes of peptic ulcer are not fully known, but there are many factors which can precipitate or contribute to the acute development of a peptic ulcer.
10. During the life of an ulcer, there are often periods of remission followed by periods of exacerbation. The periods of remission are unpredictable, and may last for a few days or several years. X-ray evidence relating to the existence of an ulcer during this stage is variable. During the remission stage, the ulcer may undergo the process of healing and replacement of tissues. However, a healed ulcer is not synonymous with a “cured ulcer,” for an individual may have a healed ulcer but not be cured in the sense that he may sub *763 sequently have additional trouble in the nature of a recurrent ulcer.
11. The standard established by the Navy for sea-duty officers during World War II was the ability to perform all of his duties aboard ship at sea. An officer could be recommended for sea duty during a remission or an inactive stage of his ulcer.
12. Individuals who have had a peptic ulcer may experience what is sometimes described as a predisposition to recurrence of peptic ulcer. The fact that peptic ulceration is demonstrated does not necessarily mean that a new disease or disability has occurred. It could be a recurrence or further manifestation of the same general disease process. Service incurrence is established, however, by a showing that the disabling condition is attributable to military service, whether it be another ulcer or an aggravation of the earlier disease process.[2]
13. At the time plaintiff was diagnosed as having a duodenal ulcer in April of 1943, he had not been engaged in combat with the enemy nor had he been in a combat zone. Plaintiff’s combat duty did not commence until 18 months later, on October 6, 1944, when he reported aboard the U.S.S. James O'Hara. The only times plaintiff served in combat with the enemy were when he was serving aboard the O'Hara and the U.S.S. Cavalier.
14. On April 21, 1943, plaintiff was transferred to the U.S. Naval Hospital, Seattle, Washington, for diagnosis and treatment. He stayed in the hospital until September 20, 1943, when he was discharged to duty with the recommendation that he be returned to shore duty for at least 6 months and that he be examined prior to nomination for duty at sea or in foreign service.
15. On November 10, 1943, plaintiff was examined and found physically qualified for promotion in accordance with Al Nav 166-43, which states, in part:
Special service Reserve officers may be appointed, if found physically qualified to perform the duties to which assigned.
*764 A notation was made at that time that be had 152 sick days, with a diagnosis of duodenal ulcer. The promotion was given just one month after plaintiff was refused promotion on the ground that he was not physically qualified in view of his 152 sick days. The promotion was given as a result of new regulations concerning special service officers.
16. From the date of plaintiff’s release from the hospital (September 20, 1943) until approximately the first week in November 1944, plaintiff’s ulcer was in a stage of remission. On November 23, 1944, the following notation was made in plaintiff’s medical record:
For past several weeks has had some digestive distress, some burning in the morning and during the night and occasional vomiting. Also complains of lassitude and general weakness. General examination negative. Probably mild recurrence of Gastric Ulcer symptoms. Given amphjel Dm 2 and multiple Vitamins with slight improvement.
17. The records reveal two instances of actual combat while plaintiff was on the U.S.S. CHara (the 20th of October 1944 and the 24th of November 1944), and two instances when he was aboard the U.S.S. Cavalier, although he experienced other periods of combat service.[3] The actual combat while plaintiff was on the two ships mentioned occurred (1) while on duty on the CHara, during landings on Leyte in the Philippines during October and November 1944; and (2) while on the Cavalier, when that ship was under torpedo attacks in the Lingayen Gulf outside Manila Bay in January 1945.
18. On January 17,1945, plaintiff was hospitalized aboard the Cavalier with a diagnosis of ulcer, duodenum. On February 14, 1945, he was transferred to a naval base hospital. During the period from February 14, 1945, to December 1945, plaintiff received treatment at various naval hospitals, with recurrences of his previous symptoms. On February 1, 1946, an X-ray examination of the upper gastrointestinal tract was negative; on February 21,1946, the diagnosis was *765 changed to “no disease,” with a notation that he had a completely healed duodenal ulcer.
19. Plaintiff was released from active duty on May 22, 1946; his naval records were corrected in 1957, which resulted in his being retired by reason of physical disability effective May 23, 1946. He is currently receiving disability retirement pay.
20. Plaintiff was treated for stomach ulcer in a Veterans Administration Hospital, San Francisco, California, during the period from January 5 to February 7, 1953, and discharged on the latter date as “improved.” He was readmitted to the same hospital April 5,1953, for further treatment of the ulcer condition. On April 17, 1953, a stomach resection (subtotal gastrectomy and gastro-duodenostomy) was performed on plaintiff because of the ulcer condition.
21. It is plaintiff’s view that the incapacitating disability for which he was retired effective May 23,1946 (ulcer, duodenum, chronic), is not the same disability which he had in 1943 but is a “new, separate and distinct disability, and was incurred in combat with an enemy of the United States.” The proof does not support a finding that the disease involved in this claim was “incurred in combat with an enemy of the United States or [resulted] from an explosion of an instrumentality of war * * *.” It is also plaintiff’s contention that he did not intend to, and did not, release the United States from claims for further amounts of retirement pay for periods not encompassed by the check for $4,885.69 which he negotiated in late April or early May 1958. We do not reach that issue in view of the determination that the limiting provisions of the Dual Compensation Statute apply to plaintiff and preclude recovery of any additional retirement pay for the period involved in this suit. Plaintiff has not met the burden of proof required as a basis for recovery.
CONCLUSION OE LAW
Upon the foregoing findings of fact which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and the petition is therefore dismissed.

 An Act of February 20, 1954, 68 Stat. 18, further amended Section (b) to read as follows: “Provided, That this section shall not apply to any regular or emergency commissioned officer retired for disability (1) incurred in combat with an enemy of the united States, or (2) caused by an instrumentality of war and incurred in line of duty during an enlistment or employment as provided in Veterans Regulation Numbered 1 (a)t part I, paragraph I.”

 Findings 9, 10, and 12 are based on medical testimony presented during the trial and on plaintiff’s exhibit No. 11.

 For purposes of entitlement to certain consideration and recognition there la an Important distinction between being in actual combat with the enemy and being on active duty in what the military leaders designated as a "combat zone” at the time.