**William T. SODE**

v.

**The UNITED STATES.**

**No. 492–73.**

United States Court of Claims.

March 17, 1976.

532

John I. Heise, Jr., Silver Spring, Md., attorney of record, for plaintiff. S. Giles Payne, Fairfield, Conn., of counsel.

Kenneth J. Ingram, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant.

Before DURFEE, Senior Judge, and NICHOLS and KASHIWA, Judges.

DURFEE, Senior Judge:

In this case of first impression, a former uniformed military service officer, presently a Federal civilian employee, retired from the service because of medical disability, argues that the 1964 amendments to the

Dual Compensation Act [1] provide an exemption to the retirement pay reduction provisions of that Act [2] for an officer medically retired because of contraction of a disabling disease in an armed conflict zone and that the Coast Guard Board for Correction of Military Records (BCMR) erred in holding to the contrary. On thorough consideration of the issue, the BCMR's decision denying plaintiff's exemption claim is sustained.

Plaintiff commenced active service in the United States Coast Guard in January 1950 as an Ensign rank officer. From November 1967 to November 1968, plaintiff, then a Coast Guard Commander, served as a Coast Guard Shipping Advisor with the Military Sea Transport Service, Far East, as a Merchant Marine Detail Officer attached to the Coast Guard Merchant Marine Detail stationed in Saigon, Republic of Viet Nam, an acknowledged armed conflict zone. As a Merchant Marine Detail Officer in Viet Nam, plaintiff's duties were to investigate civilian seamen disciplinary problems on United States' merchant ships delivering supplies to Viet Nam. This duty included excursions to outlying Vietnamese ports, often through hostile territory and under enemy fire, to board incoming American flag merchant ships, inspect the vessels' records and investigate reported incidents of crew misconduct.

While in Viet Nam, plaintiff developed physical disabilities affecting his eyesight, equilibrium and internal bodily functions. Plaintiff's maladies were eventually diagnosed as nonspecific meningitis, and he received treatment in service hospitals in Viet Nam and the United States. Plaintiff returned from Viet Nam on December 30, 1968 and immediately entered the United States Public Health Service Hospital in Seattle, Washington. While in the hospital, plaintiff underwent surgery for correction of the complained of disabilities. Following his release from the hospital in February 1969, plaintiff's condition showed some improvement. However, in October 1969 plaintiff was again admitted to the Seattle Public Health Service Hospital for a second corrective operation. During this hospital stay, a Central Physical Evaluation Board evaluated plaintiff's condition as a 90 percent combined disability rating.[3] The Physical Review Counsel approved the Board's disability evaluation on December 12, 1969 and the Coast Guard Commandant approved the same on January 5, 1970. On January 18, 1970, plaintiff was permanently retired from the service by reason of physical disability.

It is undisputed that plaintiff's medical records evidenced no prior history of the disabilities which resulted in plaintiff's retirement from the service and that the disabilities had their onset during plaintiff's service in Viet Nam.

In a January 15, 1970 letter to the Coast Guard Commandant, plaintiff requested that his medical disability retirement be found to be caused by wounds, disease or injury incurred while serving in a combat zone. The Coast Guard Commandant responded to plaintiff's request on March 10, 1970, advising plaintiff that, if he felt his retirement had been improperly categorized, he should seek appropriate relief from BCMR.

On January 25, 1970, plaintiff accepted a position as a Hearing Examiner (now Ad-

---

1. 5 U.S.C. § 5531, *et seq.* (1970).

2. By an Act of August 19, 1964, Pub.L. 88–448, 78 Stat. 484, Congress amended the retirement pay reduction exemption contained in the prior Economy Act of June 30, 1932, 74 Stat. 382, 406, as amended 54 Stat. 760, 761 to its present language. By an Act of September 6, 1966, Pub.L. 89–554, 80 Stat. 378, 482, Congress revised the form, but not the language, of the retirement pay reduction exemption to that presently appearing in 5 U.S.C. § 5532(c) (1970).

3. Plaintiff's disabilities were rated by a Central Physical Evaluation Board as follows:
   1. Brain, new growth of, benign, minimum rating with impairment and weakness of gait—60%.
   2. Skull, loss of both inner and outer tables following surgery. Area larger than 2 square inches—50%.
   3. Muscle function, eyes, impairment of—30%.
   Plaintiff received a 90% combined rating of his disabilities.

ministrative Law Judge) with the Social Security Administration, Bureau of Hearings and Appeals, Division of Field Operations, with the San Francisco Regional Office, Seattle Duty Station. In this position, plaintiff became subject to the retirement pay reduction provisions of the Dual Compensation Act.[4]

On May 19, 1970, plaintiff, through counsel, wrote the Chief Medical Officer of the Coast Guard requesting information on the necessary procedural steps to qualify for an exemption to the retirement pay reduction provisions of the Dual Compensation Act. Subsequently, on January 25, 1971, plaintiff applied to the BCMR requesting correction of his records to "indicate retirement by reason of disability resulting from injury or disease received in line of duty as a direct result of armed conflict pursuant to Title 5, U.S.Code, Section 5532(c)."

Plaintiff requested the above record correction to avail himself of the reduction in retirement pay exemption to the Dual Compensation Act (5 U.S.C. § 5532(c)). That exemption provides in pertinent part:

(c) The reduction in retired or retirement pay required by subsection (b) of this section does not apply to a retired officer of a regular component of a uniformed service—

(1) whose retirement was based on disability—

(A) resulting from injury or disease received in line of duty as a direct result of armed conflict; or

(B) caused by an instrumentality of war and incurred in line of duty during a period of war as defined by sections 101 and 301 of title 38; * * *.

After thorough consideration of the case, the BCMR, in a detailed opinion, approved by the Secretary of Transportation's designee, denied plaintiff's record correction:

We [the BCMR] have seriously considered the contentions advanced by the petitioner; however, we are unable to agree. It is our opinion, based on the medical findings and evaluations of record, that his disability cannot be characterized as an injury or disease received in line of duty as a direct result of the armed conflict in Viet Nam; nor can it be said that his disability was caused by an instrumentality of war while in line of duty. We do not agree with the argument advanced by the petitioner that, the amendment of the Economy Act substituted the words "armed conflict" for the word "combat", in order to broaden the class of persons entitled to exemption from retirement pay reduction. In our opinion, the substitution was made merely to enlarge the area of hostilities where a serviceman might become engaged in combat with the enemy. While one may well conclude that petitioner was in the area of armed conflict while in Viet Nam, there has been no showing that he received an injury which caused his disability nor has the petitioner shown to our satisfaction that his disability should be characterized as a disease incurred or contracted as the direct result of armed conflict.

█ In their respective summary judgment motions, neither party disputes the above summarized facts. Rather, the parties take opposite stands as to the legal conclusions to be drawn from those facts. Plaintiff contends that they adequately establish his entitlement to an exemption from the Dual Compensation Act. Defendant argues for the reverse contention that they preclude plaintiff's entitlement to an exemption. Thus, the issue to be decided is

---

4. The retirement pay reduction provisions of the Dual Compensation Act, 5 U.S.C. § 5532(b), specify:

"(b) A retired officer of a regular component of a uniformed service who holds a [Federal civilian office or] position is entitled to receive the full pay of the position, but during the period for which he receives pay, his retired or retirement pay shall be reduced to an annual rate equal to the first $2,000 of the retired or retirement pay plus one-half of the remainder, if any. In the operation of the formula for the reduction of retired or retirement pay under this subsection, the amount of $2,000 shall be increased, from time to time, by appropriate percentage, in direct proportion to each increase in retired or retirement pay under section 1401a(b) of title 10 to reflect changes in the Consumer Price Index."

whether the retirement pay reduction exemption contained in 5 U.S.C. § 5532(c)(1)(A), set forth above,[5] is, as plaintiff contends, available to a qualified individual on a showing that he contracted a disease in an armed conflict zone which resulted in his disability retirement or rather, as defendant argues and the BCMR held, available to a qualified individual on a showing that he contracted a disease as a direct result of armed conflict which resulted in his disability retirement. The court concludes that the latter proposition must prevail.

In interpreting the retirement pay reduction exemption provided by 5 U.S.C. § 5532(c)(1)(A) " * * * our problem is to construe what Congress has written. After all, Congress expresses its purpose by words. It is for us to ascertain—neither to add nor to subtract, neither to delete nor to distort." *62 Cases of Jam v. United States*, 340 U.S. 593, 596, 71 S.Ct. 515, 518, 95 L.Ed. 566, 570 (1951). Helpful in solving this problem are several recognized principles of statutory analysis calculated to expose the correct interpretation of a disputed statute. Prominent among these principles are the established analytical guides "that the ordinary and commonly understood meaning shall be attributed to the terms employed in the statute, unless a contrary meaning is clearly intended." *Benton v. United States*, 488 F.2d 1017, 1020, 203 Ct.Cl. 263, 269 (1973), and "that an unambiguous statute should be given effect according to its plain and obvious meaning." *Prudential Ins. Co. v. United States*, 319 F.2d 161, 166, 162 Ct.Cl. 55, 65 (1963). Besides the above noted fundamental principles of statutory analysis resort to secondary guideposts serve to elucidate the intended purpose and meaning of a statute. As a statute cannot be divorced from the circumstances existing at the time of its passage, the legislative history of a statute provides a certain degree of insight into the Congressional motivation behind a statute. *Akins v. United States*, 439 F.2d 175, 177, 194 Ct.Cl. 477, 483

(1971). In *McLean v. United States*, 226 U.S. 374, 33 S.Ct. 122, 57 L.Ed. 260 (1912), the Supreme Court approved this court's examination of Congressional reports to ascertain the Congressional intent behind a particular statute. Another well established aid to statutory meaning and intent is the rule " * * * that the construction given to any law or regulation by the administrative agency charged by statute with carrying it out, is entitled to great weight by the courts and ought not be overruled without very compelling reasons. * * * " *Kantor v. United States*, 205 Ct.Cl. 1, 7 (1974).

In addition to the preceding affirmative principles of statutory analysis, there exists the helpful negative analytical precept that " * * * [s]tatutes, like regulations, must not be construed to produce absurd and whimsical results unrelated to congressional purpose * * *." *Steuer v. United States*, 207 Ct.Cl. 282, 294 (1975).

Application of the aforementioned principles to the problem of the retirement pay reduction exemption to the Dual Compensation Act, provided in 5 U.S.C. § 5532(c)(1)(A), compels the conclusion that the exemption applies, as defendant contends, to those disabled service retirees who received their disability as a direct result of armed conflict.

The most compelling reason behind the above conclusion is the statute itself. The statute does not want for clarity of expression, but rather proclaims clearly that to qualify for the exemption the disability must be received as a direct result of armed conflict. *In ordinary terms, for a condition to be the direct result of an event, the event must be the direct cause of the condition.* Hence, under the statutory language of the exemption, if the disability must be the direct result of armed conflict, the armed conflict must be the direct cause of the disability.

Plaintiff's repeated argument that the statute applies to persons contracting a disabling disease as a direct result of their

---

5. Plaintiff bases his exemption claim only on 5 U.S.C. § 5532(c)(1)(A) and acknowledges the exemption provided by 5 U.S.C. § 5532(c)(1)(B) is not at issue herein.

country's involvement in armed conflict, distorts the plain causality requirement contained in the statute. Under plaintiff's analysis, to activate the exemption a disability need only result from a country's involvement in armed conflict rather than the armed conflict itself. This argument cannot prevail against the plain wording of the statute which specifies that the disability must be received as a *direct result* of armed conflict.

The present statutory exemption to the retirement pay reduction provisions to the Dual Compensation Act under which plaintiff claims is an amended version of a similar exemption contained in the Economy Act of June 30, 1932, 47 Stat. 382, as amended 54 Stat. 760, 5 U.S.C. § 59a. The amended 1932 Act contained the following exemption:

> (b) This section shall not apply to any person whose retired pay, plus civilian pay, amounts to less than $3,000: *Provided*, That this section shall not apply to regular or emergency commissioned officers *retired for disability incurred in combat with an enemy of the United States* or for disabilities resulting from an explosion of an instrumentality of war in line of duty during an enlistment or employment as provided in Veterans Regulation Number 1(a), part I, paragraph I. [Italics supplied.]

In *Kennedy v. United States*, 162 Ct.Cl. 752 (1963), the court interpreted this exemption as requiring a party claiming entitlement to the exemption, to show a " 'direct causal relationship between the combat and the disability.' " *Kennedy v. United States, supra*, 162 Ct.Cl. at 757.

Plaintiff contends that the *Kennedy* decision is inapplicable to the present case because of the 1964 amendments to the exemption which substituted the requirement that the disability result "from injury or disease received in line of duty as a direct result of armed conflict" for the requirement that the disability be "incurred in combat with an enemy of the United States." While the *Kennedy* case is factually distinguishable from this case in some

respects, the causation standard laid down in the 1963 *Kennedy* decision remains intact. Plaintiff advances no acceptable argument that 1964 substitution of "armed conflict" for "combat" in the exemption abrogated the causality requirement between the military activity (armed conflict or combat) and the disability.

The legislative history behind the 1964 amendment to the exemption statute both supports the continued vitality of the causality requirement and refutes plaintiff's argument that the amended version of the exemption expanded its coverage to those disabled just while serving in an armed conflict zone.

The Senate Report on the bill containing the 1964 exemption amendments appears in 2 U.S.Code Cong. and Adm.News, p. 2834 (1964). That report notes in its opening paragraph that the amending bill was proposed " * * * to simplify, modernize, and consolidate the laws * * * concerning the civilian employment of retired members of the uniformed services * *." 2 U.S.Code Cong. and Adm.News, p. 2834 (1964). The report states as one of the basic purposes of the proposed legislation which contained the exemption amendments:

> (1) At the present time, legislation and administrative decisions in regard to dual compensation and dual employment are varied and complex. There are approximately 50 separate statutes and 200 Comptroller General decisions relating to the employment of retired military personnel and the dual employment of civilian officers. Few administrators or personnel officers in Federal agencies fully understand the present law, and cannot be present in every case when an important decision or interpretation applicable to a particular situation is made. *Thus by merely simplifying and consolidating all these laws and regulations into one manageable statute, a major accomplishment will be achieved.* * * *. 2 U.S. Code Cong. and Adm.News, p. 2835 (1964) [Emphasis added].

None of the four stated purposes of the legislation which eventually amended the retirement pay reduction exemption proposed to change, broaden or modify the prevailing law regarding the compensation of disability retired service personnel employed in Federal service. Rather the report states that "[r]etired Reserve officers, enlisted men, and Regular officers retired for combat disability are not now restricted by dual employment laws. [The proposed legislation] does not affect these retired military persons insofar as their retirement pay or civilian pay is concerned. It does, however, give their fellow service member, the Regular officer retired upon the completion of his career, a more equitable employment opportunity". 2 U.S.Code Cong. and Adm.News, pp. 2835–36 (1964).

The views of the Executive Branch in support of the exemption amending legislation, contained in the Senate Report without opposition, note that:

> The proposed law would continue the principle of treating separately those retired military personnel whose retirement was based on disability resulting from an injury or disease received in line of duty as a direct result of armed conflict, or caused by an instrumentality of war and incurred in line of duty during a period of war. 2 U.S.Code Cong. and Adm.News, p. 2849 (1964).

The Chairman of the Civil Service Commission, by letter reprinted in the Senate Report in favor of the amending legislation, explained the limited purpose behind the proposed amendment to the reduction in retirement pay exemption:

> (1) [A prior exemption amending bill] contained an exemption from the bill's provisions for retired military members whose retirement was based on disability "incurred in combat with an enemy of the United States." This exemption has been changed in the current proposal to include those retired members whose disability results "from an injury or disease received in line of duty as a direct result of armed conflict." This change would

extend the exemption to those disabled in the kind of cold war conflicts in which American military personnel are now engaged. 2 U.S.Code Cong. and Adm. News, p. 2845 (1964).

A review of the legislative history of the 1964 Act amending the retirement pay reduction exemption clearly indicates that Congress in amending the exemption to its present form intended merely to simplify and consolidate the various existing employment laws and did not intend to extend the applicability of the above exemption to the manner plaintiff presently advocates.

The Comptroller General, after a review of the legislative history, reached the same conclusion:

> There is nothing in the legislative history of the Dual Compensation Act of 1964 to suggest that Congress intended that the change in phraseology from "in combat with an enemy of the United States" to "as a direct result of armed conflict" should change the basic requirement that the disability should directly result from armed conflict. It seems doubtful that Congress intended that the mere incurring of a disease in a general area where combat operations might occur should in itself be regarded as "a direct result" of armed conflict. In other words, we think that the law contemplates that an officer is within the exemption only if the disability for which retired is "a direct result of armed conflict" in which the retired officer himself was personally engaged rather than merely incurred in the general area in which the United States is involved in an armed conflict. * * *. 48 Comp.Gen. 219, 222–23 (1968).

██ Lastly, plaintiff's position that any injury or disease that service personnel receive while serving in an armed conflict zone which results in their disability retirement falls within the retirement pay reduction exemption cannot be sustained. One can imagine an almost unlimited number of injuries or diseases, both exotic and ordinary, which members of the armed services

**538**

could receive by their mere presence in an armed conflict zone without any relation to the actual ongoing armed conflict. To accept plaintiff's interpretation of the retirement pay reduction exemption would unquestionably violate the rule that statutes not be interpreted to produce absurd or whimsical results. *Steuer v. United States, supra.*

■ While for the above stated reasons, plaintiff cannot prevail in this case, his effort has provided the court with the appropriate vehicle to update its prior *Kennedy* decision to meet the changing needs of the time as reflected in Congress' enactment of 5 U.S.C. § 5532(c)(1)(A). To prevail on an entitlement claim to a 5 U.S.C. § 5532(c)(1)(A) exemption a plaintiff now must show a direct causal relationship between armed conflict and the disabling injury or disease received in line of duty.

■ Resolving the interpretation of 5 U.S.C. § 5532(c)(1)(A) as requiring a direct causal relationship between the armed conflict and the disability disposes of plaintiff's claim as the undisputed medical evidence before the BCMR regarding plaintiff's disability did not specifically attribute plaintiff's contraction of non-specific meningitis to direct armed conflict. Rather the medical opinion before the BCMR repeatedly diagnosed plaintiff's disability as of unknown origin.

Accordingly, plaintiff's summary judgment motion is denied, and his petition dismissed. Defendant's cross-motion for summary judgment is granted.