BarNey, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
The question for decision in this case is the proper construction to be given to the following legislation contained in the act of March 3,1899:
“All officers, including warrant officers, who have been or may be appointed to the Navy from civil life shall, on the date of appointment, be credited, for computing their pay, with five years’ service.”
The plaintiff entered the Naval Academy August 3, 1908, and remained there until nearly the graduating time of his class in 1912. On April 5 in the latter year he was officially informed that on account of deafness disclosed upon examination before a medical board his resignation would be accepted, otherwise he would be dropped from the rolls of the Naval Academy. After further consideration of the matter *255 he was allowed to remain at the Naval Academy until shortly before the graduation of his class, as before stated; but on July 10, 1912, he was directed to tender his resignation, which he the next day did, and it was accepted July 15. On April 29, 1912, he applied for permission to take the examination for assistant paymaster in the Navy, and on June 10 of the same year asked for permission to take the examination for appointment as second lieutenant in the Army. He took his physical examination for appointment as assistant paymaster in the Navy July 22,1912, and his professional examination two days later, and was notified of his appointment, as such paymaster August 28, 1912. He took the oath of office and accepted such appointment September 3, 1912, and his official bond was approved September 4,1912.
In estimating his longevity pay the accounting officers of the Navy gave him credit for 3 years 11 months and 13 days for service as midshipman at the Naval Academy, but refused to give him credit for 5 years’ constructive service as having been “appointed to the Navy from civil life” under the statute above quoted, and we are now called upon to decide whether he was entitled to such credit.
The true interpretation to be given to the statute in question is not without its difficulties. The language of the statute appears to be plain. It says: “ All officers * * * who have been or may be appointed from civil life, shall on the date of appointment, be credited, for computing their pay, with five years’ service.” Notwithstanding the apparent simplicity of the language of this statute it needs no discussion to make it evident that the phrase “from civil life ” needs some reasonable construction. If taken literally any or all of the officers of the Navy might resign one day and enter the service the next and take advantage of the statute to increase their longevity pay. This construction of the law would lead to such an absurdity and injustice as to shock the moral sense of everyone. In fact, the Supreme Court decided that' this construction of the law would not be allowed. United States v. Alger, 151 U. S., 365.
The object of the statute was apparent to everyone. It was to induce men then in civil life, most if not all of whom *256 had never been in the service, to enter it without the disadvantage occasioned by the allowance to graduates of the Naval Academy of their time spent there as service in the Navy. It was not intended either to induce or allow men to get out of the service for a short time and then take advantage of it. In the Guilmette case, 49 C. Cls., 188, this court held that where an officer of the Navy in good faith had resigned from the service and reentered after 17 days, he would be allowed the advantages of this statute. But the circumstances of that case were peculiar. Not only was the officer’s resignation from the service in evident good faith with the intention of entering civil life, but after resigning he had twice been tendered positions in the Navy and had refused them, before accepting the office under which he was allowed the benefit of the statute. We believe that we went to the full limit of liberality in the construction of this statute in that case, and are not inclined to go any further. We do not wish to be understood as holding that a naval officer may not in good faith resign from the service and reenter again and take advantage of this statute, but we believe such separation from the service should be so substantial as to bring the case within the spirit of the law.
The circumstances in this case we think are radically different. The plaintiff did not resign from the service voluntarily ; he never intended to enter civil life if he could remain in the service; before resigning he had made application to enter two other branches of the service; he secured influence which induced the authorities to allow him to remain at the Naval Academy more than a year after it was known that he would not be allowed to graduate. All of which was done for the evident purpose of remaining in the service if possible.
Taking all of the facts and circumstances of this case into consideration,- we do not think the plaintiff reentered the service after his resignation “from civil life” within either the spirit or the letter of the statute. In coming to this conclusion we take into consideration, as we think we have a right to, the absurdity and rank injustice as the re- *257 suit of any other. He is now allowed practically the same credit for service as his classmates at the Naval Academy, and to decide that he entered the service the second time from “civil life” would put him five years ahead of them. Thus a premium would be allowed for a physical defect to one attending the Naval Academy, and who during all the time was making every effort to remain in the service. We think such consideration is fully warranted by the decision of the Supreme Court in the case of Holy Trinity Church v. United States, 143 U. S., 457.
It is not without significance that the same Congress enacted a law providing that service while at either the Naval or Military Academies should not be counted in computing length of service, and also repealed the statute under consideration in this suit. 37 Stat. L., 594, 891. Thus it appears that one was considered as cocomitant with the other.
It may not be out of place here to mention the case of Westlalie, which was decided at the same time with the instant case and wherein the petition was dismissed without an opinion. Both depend upon the same statute, and the West-lake case is cited as illustrating the view taken of that statute in this opinion. Westlake entered the Naval service as an enlisted man December 19,1898, and served until October 6, 1900, and again from April 18 to August 16, 1902, when he was made paymaster’s clerk. This appointment was revoked in course January 10, 1903, and on May 26, 1903, he was again appointed paymaster’s clerk. March 22, 1904, while still serving under said latter appointment, he was officially authorized to stand examination for appointment as assistant paymaster. April 1, 1903, he tendered his resignation from the service, to take effect April 20, assigning as a reason a wish to visit his family in the event that he should be successful in his examination and subsequently be appointed assistant paymaster, and to go out of the service permanently in case of failure. The Navy Department replied under date of April 8, and instead of accepting his resignation at once ordered him to continue on duty on the U. S. S. Solace until Paymaster Balthis should be detached from duty on that vessel on or about May 10, 1904, and *258 then proceed to his home, and accepted his resignation to take effect on his arrival there. In obedience to an order subsequently received he proceeded to his home May 1 instead of May 10, as originally directed, and arrived there May 11, and there found awaiting him an appointment as assistant paymaster together with a commission as such. He accepted the appointment the nest day, and on May 13 his bond was approved.
The only difference between that case and the one under consideration is the fact that Westlake remained out of the service a shorter time, and his appointment antedated the time he left the service.
Without consideration of the question whether the word “ appointment ” in the statute should be literally construed or construed to mean entry into the service, we should not hesitate in deciding that this was not entry into the service from “ civil life,” the same as we have decided in this case, and for the same reason. Application had been made to continue in the service before resigning, and entering into civil life was to depend upon success or failure in examination.
It follows from the foregoing that the petition must be dismissed.
All concur.