# ELIGIBILITY OF A RETIRED MILITARY OFFICER FOR APPOINTMENT AS ADMINISTRATOR OF THE NATIONAL AERONAUTICS AND SPACE ADMINISRATION

*A retired military officer—and certainly one who has engaged in civilian pursuits after his retirement—is eligible for appointment as Administrator of the National Aeronautics and Space Administration.*

July 8, 2009

## MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

You have asked for our opinion whether a retired military officer is eligible for appointment as Administrator of the National Aeronautics and Space Administration ("NASA"). Section 202 of the National Aeronautics and Space Act of 1958, Pub. L. No. 85-568, 72 Stat. 426 ("Space Act") (codified as amended at 42 U.S.C. § 2472(a) (2006)), creates NASA and provides that it "shall be headed by an Administrator, who shall be *appointed from civilian life* by the President by and with the advice and consent of the Senate." 42 U.S.C. § 2472(a) (emphasis added). The Space Act does not define the phrase "appointed from civilian life," nor does it expressly address whether a retired military officer is eligible to be appointed as NASA Administrator.

On June 22, 2009, the President nominated Charles F. Bolden, Jr., a retired General in the United States Marine Corps, to be Administrator of NASA. *See* 155 Cong. Rec. S6898 (daily ed. June 22, 2009). General Bolden retired from the Marine Corps in 2003. He is at present the Chief Executive Officer of a private consulting firm.

We believe that a retired military officer—and certainly one who has engaged in civilian pursuits after his retirement—is eligible for appointment as Administrator of NASA. This conclusion is supported by the ordinary meaning of the phrase "from civilian life," use of the phrase in other statutes, practice under such statutes, and longstanding Executive Branch precedent interpreting the phrase and similar words. We recognize that there are possible arguments to the contrary, but in our view these arguments, in the end, are unconvincing.[*]

## I.

The Space Act establishes NASA as a "civilian agency," whose activities "should be devoted to peaceful purposes for the benefit of all mankind." Pub. L. No. 85-568, §§ 101, 102(b). The statute requires the Administrator to come from "civilian life." *See id.* § 202. It does not specifically address whether a retired military officer, who continues to hold a commission, would meet this qualification. Several arguments, however, support the conclusion that a retired military officer is eligible for appointment as Administrator of NASA.

First, the usual definition of "civilian" includes retired military personnel who are not on active duty. *See* American Heritage Dictionary (2009), *available at*

---

[*] This opinion is identical to one issued July 6, 2009, except that the earlier version inadvertently omitted one word.

http://education.yahoo.com/reference/dictionary/entry/civilian (defining "civilian" as "[a] person following the pursuits of civil life, especially one who is not an active member of the military"); Merriam-Webster Online Dictionary (2009), *available at* http://www.merriam-webster.com/dictionary/civilian (defining "civilian" as "one not on active duty in the armed services"); Webster's Seventh New Collegiate Dictionary 152 (7th ed. 1963) (defining "civilian" as "one not on active duty in a military, police, or fire-fighting force"). In its ordinary meaning, therefore, the phrase "appointed from civilian life" refers to a person who is not on active military duty at the time of appointment. A retired military officer who has ceased active military service falls within this class of persons. Thus, by the literal terms of the statute, Congress did not bar all retired military personnel from appointment.

Second, although Congress did not define in the Space Act which persons are considered to be in "civilian life," the use of the phrase "appointed from civilian life" in other statutes supports the conclusion that the phrase generally does not disqualify retired military officers. In some statutes, as in the Space Act, Congress has limited eligibility for appointment to persons "from civilian life," without specifying whether retired military officers are deemed in "civilian life." *See*, *e.g.*, 10 U.S.C.A. § 133(a) (West Supp. 2009) (requiring Under Secretary of Defense for Acquisition, Technology, and Logistics to be "appointed from civilian life"); 15 U.S.C. § 633(b)(1) (2006) (requiring Administrator of Small Business Administration to be "appointed from civilian life"); 42 U.S.C. § 2286(b)(1) (2006) (requiring members of Defense Nuclear Facilities Safety Board to be "appointed from civilian life"). In other statutes, however, Congress not only has directed that the appointee be "from civilian life," but also has explicitly disqualified all retired military officers from appointment during a specified cooling-off period. These statutes support the conclusion that the phrase "from civilian life," standing on its own, encompasses retired military officers.

For example, 10 U.S.C. § 113(a) (2006) requires that the Secretary of Defense be "appointed from civilian life," but excludes from eligibility any person "within seven years after relief from active duty as a commissioned officer of a regular component of an armed force." *See also* 10 U.S.C.A. § 134(a) (West Supp. 2009) (limiting appointment eligibility for Under Secretary of Defense for Policy to persons "appointed from civilian life" who are "within seven years after relief from active duty as a commissioned officer of a regular component of an armed force"); 10 U.S.C. § 3013(a) (2006) (limiting appointment eligibility for Secretary of the Army to persons "appointed from civilian life" who are "within five years after relief from active duty as a commissioned officer of a regular component of an armed force"); 10 U.S.C. § 5013(a) (2006) (same for Secretary of the Navy); 10 U.S.C. § 8013(a) (2006) (same for Secretary of the Air Force); 42 U.S.C. § 5812(a) (2006) (limiting appointment eligibility for Administrator of Energy Research and Development to persons "appointed from civilian life" who are "within two years after release from active duty as a commissioned officer of a regular component of an armed force"). The statutory exclusion of retired military officers from appointment to certain offices for a specified time period necessarily implies that such persons are eligible for appointment to those same offices once the cooling-off period has ended. Because persons appointed to those offices must be "from civilian life," it follows that retired military persons are considered to be "from civilian life." When Congress intends to make some retired military officers ineligible for appointment, it has done so expressly.

Similarly, when Congress has barred certain retired military personnel, for all time, from appointment to an office having a "civilian life" requirement, it has explicitly stated the prohibition. Congress, for example, has directed that judges of the United States Court of Appeals for the Armed Forces ("CAAF") "be appointed from civilian life," but, "[f]or purposes of appointment of judges to the court," has provided that "a person retired from the armed forces after 20 or more years of active service (whether or not such person is on the retired list) shall not be considered to be in civilian life." 10 U.S.C. § 942(b)(1) & (4) (2006). *See also* 49 U.S.C. § 106(b)-(d) (2006) (requiring Administrator of Federal Aviation Administration to "be a civilian," but imposing the condition that where "the Administrator is a former regular officer of an armed force, the Deputy Administrator may not be an officer on active duty in an armed force, a retired regular officer of an armed force, or a former regular officer of an armed force"). Congress's exclusion of certain retired military personnel from appointment to the CAAF would have no purpose unless they would otherwise be "from civilian life." Furthermore, under the statute, retired military personnel with less than twenty years of active service necessarily *are* considered to be "from civilian life."

All of these statutes support the view that when Congress limits appointments to persons "from civilian life," it treats retired military officers as coming "from civilian life." Under these statutes, when Congress intends to exclude retired military officers from appointment, it explicitly states that exclusion. The Space Act uses the phrase "from civilian life" without any further condition. The text of the statute, therefore, gives no indication that Congress, which has used the same "civilian life" requirement in many other acts, excluded retired military officers from appointment.

Third, there is practice—established by Presidents and the Senate acting together—in which retired military officers have been nominated, confirmed, and appointed to serve in positions covered by a "from civilian life" qualification. The Under Secretary of the Navy, for example, must be appointed "from civilian life." 10 U.S.C. § 5015(a) (2006). The current Under Secretary, Robert O. Work, who was confirmed May 18, 2009, is a retired military officer. The Under Secretary of Defense for Intelligence also must be "appointed from civilian life," 10 U.S.C. § 137(a) (2006), and the current occupant of that position, James R. Clapper, who was confirmed April 11, 2007, is a retired officer. These current examples are only part of a longer and more extensive practice. *See* Memorandum for William J. Haynes II, General Counsel, Department of Defense, from C. Kevin Marshall, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Eligibility of a Retired Army Officer to be Appointed Inspector General of the Department of Defense* at 4-5 (May 18, 2007).

Fourth, longstanding Executive Branch precedent supports an interpretation of the phrase "from civilian life" that would extend to retired military officers. Our office previously concluded that retired military officers were not automatically disqualified from appointment to several positions that were, by statute, confined to persons "appointed from civilian life." *See* Memorandum for Cyrus R. Vance, General Counsel, Department of Defense, from Harold F. Reis, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Eligibility of a Retired Regular Officer of the Armed Forces to be Appointed to the Position of Under Secretary or Assistant Secretary of one of the Military Departments* (Feb. 3, 1961) ("*Eligibility of a Retired Regular Officer*"). We relied, in part, on "considerations [] relevant to the interpretation of the requirement that these officials shall be appointed from civilian life" that apply equally here—

"the traditional meaning of the term" and "the fact that when Congress seeks to disqualify retired regular officers it does so in unmistakable language" *Id.* at 3. We noted the possibility that, under some sets of facts, particular retired officers might not be "from civilian life," and said in particular that it would accord with "the spirit" of the requirement if a retired officer had been engaged in civilian pursuits. *See id.* at 7. Whatever the possible facts that might call into question a particular retired officer's status in "civilian life" under some statutes having a "civilian life" qualification, a retired officer's eligibility is clear when he has been engaged in civilian pursuits at the time of appointment.

A 1930 Attorney General opinion similarly held that a retired Army officer could be appointed to an office that called for an appointee "from civil life." *See Eligibility of Retired Army Officer to Hold the Position of Commissioner of the District of Columbia*, 36 Op. Att'y Gen. 389 (1930) ("*1930 Opinion*"). After canvassing the legal backdrop against which the relevant legislation had been passed, the opinion concluded:

> In using the term "civil life" Congress referred to the activity in life of the appointee. It is the taking of a person from one of two classes of society, military or civil. Military life is led when a person is in the active military service of the Army and is doing duty in his daily life in carrying out military functions. If he is carrying on military work and that is his life's activity at the time, he is not from civil life, but if he has retired from that activity and his pursuits are civil, then he is from civil life.

*Id.* at 398-99; *see id*. at 398 ("It seems reasonably clear, therefore, that in using the phrase 'civil life' . . . Congress was referring to those engaged in civil life, whether or not retired Army officers, as distinguished from the military life of an officer in active service."); *id.* at 402 ("Retired officers who have ceased to engage in military service and have entered civil life and civil pursuits . . . are in civil life within the meaning of the [statute] and eligible to appointment . . . ."). Congress, we believe, can be understood to have legislated against the background of this published Executive Branch interpretation of a term ("from civil life") that is virtually the same as the one in the Space Act ("from civilian life"), and that understanding accords with the ordinary meaning of the phrase "from civilian life," use of express language in other statutes to exclude some retired military officers who would otherwise fall within that category, and practice of the Government. We therefore conclude that a retired military officer can qualify for appointment as Administrator of NASA.

## II.

Although we believe that this conclusion is well supported, there are possible arguments for the view that the Space Act bars retired military personnel from appointment. We believe, however, that these arguments are ultimately unconvincing.

First, the legislative history of the Space Act arguably could be read to indicate that Congress intended the phrase "from civilian life," as used in that statute, to exclude retired military personnel. An earlier version of the bill may have assumed that the "civilian life" requirement barred appointment of a retired officer. That version would have prohibited the Administrator from employing retired commissioned officers under certain pay provisions unless

sufficient numbers of qualified individuals "from civilian life" were unavailable. A House committee report explained the provision as follows:

> Paragraph (10) authorizes the Administrator to employ retired commissioned officers [under certain compensation provisions]; but this authority could be exercised only when sufficient numbers of qualified individuals from civilian life are not available . . . .

H.R. Rep. No. 1770, at 20 (1958). Although the provision allowing the Administrator to employ retired commissioned officers was enacted, the condition that "sufficient numbers of qualified individuals from civilian life are not available" was omitted from the final bill. *See* Pub. L. No. 85-568, § 203(b)(11); *see* H.R. Conf. Rep. No. 85-2166, at 20 (1958) (noting omission during the conference). The legislative history does not explain why the provision was omitted, but the omission is consistent with the view that retired military officers could be considered to be in "civilian life," since that view is reflected in the phrase's ordinary meaning, prior usage by Congress, and Executive Branch precedent.

We have not found any other significant materials in the legislative history of the Space Act that bear on the interpretation of the phrase. In the end, therefore, this murky legislative history about an unenacted version of the statute does not justify the conclusion that the phrase "from civilian life" in the version ultimately enacted bars the appointment of retired military officers—particularly in light of the ordinary meaning of the phrase and the ways in which Congress has used it in other statutes.

Second, it might be argued that our interpretation is mistaken because, on at least five occasions in recent times (and once under the Space Act itself), Congress has enacted separate legislation authorizing the appointment of a particular retired military officer to a position for which eligibility was limited to those "from civilian life." In 1989, Congress passed a bill authorizing the President to appoint Rear Admiral Richard Truly as NASA Administrator. *See* Act of June 30, 1989, Pub. L. No. 101-48, 103 Stat. 136. Admiral Truly was in active service at the time that the legislation was introduced, but he had expressed his intention to retire from active military duty before being sworn in as Administrator. *See* 135 Cong. Rec. 11,719 (1989). On the same day that Congress authorized the President to appoint Admiral Truly, it passed identical legislation authorizing the appointment of retired Admiral James Busey as Administrator of the Federal Aviation Administration ("FAA"). *See* Pub. L. No. 101-47, 103 Stat. 134 (1989). Similarly, in 1984, 1991, and 1992, Congress passed legislation authorizing the President to appoint a retired military officer as FAA Administrator. *See* Pub. L. No. 102-308, 106 Stat. 273 (1992); Pub. L. No. 102-223, 105 Stat. 1678 (1991); Pub. L. No. 98-256, 98 Stat. 125 (1984).[1]

The authorization for Admiral Truly's appointment apparently rested on the view that the "civilian life" qualification otherwise would have forbidden the appointment, unless Admiral Truly surrendered his commission and thus gave up his retired pay and benefits. The

---

[1] Essentially the same statutory structure and language have also been used to authorize the appointment of an active duty military officer. *See* Pub. L. No. 81-788, 64 Stat. 853 (1950) (authorizing appointment of General George C. Marshall to serve as Secretary of Defense, an office with a "civilian life" condition).

authorization declared that, with the Senate's advice and consent, the President could make the appointment, "[n]otwithstanding the provisions of section 202(a) of the [Space Act] [which sets out the "civilian life" qualification], or any other provision of law." Pub. L. No. 101-48, § 1, 103 Stat. 136; *see also id.* § 3 (providing, "[n]othing in this Act shall be construed as approval by the Congress of any future appointments of military persons to the Offices of Administrator and Deputy Administrator of [NASA]."). The Senate committee report stated that "a review of the legislative history of the term 'from civilian' life indicates that this term excludes active duty military personnel and retired military personnel" and that "[t]o meet the strict interpretation of the term, a person would have to resign his commission and give up military benefits and pension to be considered 'civilian.'" S. Rep. No. 101-57, at 2 (1989).[2] The floor debates also revealed the view that, without a "waiver," Admiral Truly could not be appointed. *See* 135 Cong. Rec. 12,927 (June 22, 1989). To be sure, Admiral Truly disputed this conclusion. He took the view that retired military officers "do come from 'civilian life,'" although he acknowledged that the question would be "interpretable by lawyers I guess on all sides of the issue." *Nominations-May-June: Hearings Before the S. Comm. on Commerce, Science, and Transp.*, 101st Cong. 264, 279 (1989) (statement of Adm. Truly). In any event, Congress evidently acted on the view that a "waiver" was necessary.[3]

To the extent the proponents of the authorization, in the committee report and on the floor, offered a construction of the Space Act, their construction is *subsequent* legislative history of that statute and thus is entitled to little weight. *See Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) (later history is "a hazardous basis for inferring the intent of an earlier Congress" (internal quotations omitted)). A more substantial issue is that "the implications of a statute may be altered by the implications of a later statute," *United States v. Fausto*, 484 U.S. 439, 453 (1988), so that the later legislation here, while not an authoritative construction of the Space Act, might be argued to have "shape[d] or focus[ed]" that statute's "range of possible meanings," *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000).

We do not believe, however, that the legislation enacted for Admiral Truly's appointment is sufficient to alter the interpretation of the Space Act that would otherwise prevail. In *Fausto*, the leading case on the interpretive principle, the Court held that after enactment of the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 ("CSRA"), the Back Pay Act

---

[2] According to the committee report, "the President made reference to the requirement for a legislative waiver when he announced the nomination of Admiral Truly." S. Rep. No. 101-57, at 2. At the time of the President's statement, however, Admiral Truly was still on active duty, and the President said that "because Dick Truly is an active duty naval officer . . . I will need the assent and cooperation of the Congress to make this appointment." 1 Pub. Papers of George Bush 399 (1989). *See also* Pub. L. No. 107-117, § 307, 115 Stat. 2230, 2301 (2002) (allowing appointment of an active duty officer as Deputy Administrator of NASA). The President, therefore, did not suggest that he could not appoint a retired military officer unless Congress enacted legislation.

[3] Admiral Busey requested legislation so that he could maintain his retirement benefits. *See* S. Rep. No. 101-56, at 1 (1989) ("Admiral Busey has requested a legislative waiver of this prohibition in order that he may retain his status as a retired military officer while serving as Administrator, thus allowing him to retain eligibility under his retirement plan and an opportunity to participate in the Survivors' Benefit Plan."). As in the case of Admiral Truly, the Senate committee report stated that the purpose of the legislation authorizing the appointment was "to allow Admiral Busey to retain his status as a retired officer in the U.S. Navy." *Id.*

(5 U.S.C. § 5596) should no longer be interpreted to enable a federal employee to obtain review in the Court of Claims of certain personnel decisions. The Court found that such review would "turn . . . upside down" and "seriously undermine" elements of the CSRA's structure. *Fausto*, 484 U.S. at 449. Here, there is no need to reinterpret the Space Act in order to give full effect to the legislation authorizing Admiral Truly's appointment or to achieve the goal of "getting [those statutes] to 'make sense' in combination." *Id.* at 453. Even if the Space Act's "civilian life" requirement posed no obstacle, a targeted authorization for the President to make the appointment of a particular retired military officer "[n]otwithstanding the provisions of section 202(a) of the [Space Act], or any other provision of law," 103 Stat. at 136, would make sense— whatever the motivation of the Congress that enacted it—as a prudential measure, covering any possible statute that might endanger the officer's retired pay and benefits. Furthermore, other appointments could be made under the Space Act without creating any conflict with a statute authorizing the appointment of a single, named individual.

The Court's most recent extended application of the principle set forth in *Fausto* is also consistent with the conclusion that the targeted statute authorizing Admiral Truly's appointment does not alter the meaning of the Space Act itself. In *Brown & Williamson*, the Court read the Food, Drug, and Cosmetic Act, 52 Stat. 1040 (1938) ("FDCA"), to preclude the Food and Drug Administration ("FDA") from regulating tobacco. It interpreted the FDCA in the light of a string of later statutes that had presumed a lack of authority and had been enacted "against the backdrop of the FDA's consistent and repeated statements that it lacked authority under the FDCA to regulate tobacco." 529 U.S. at 144. The authorization for Admiral Truly's appointment, however, was not part of a succession of statutes under the Space Act following an Executive Branch legal interpretation that our current interpretation would disturb. Indeed, the Executive Branch legal interpretation of the relevant phrase, as explained above, has been that retired officers are "from civilian life." We therefore would not read the authorization for Admiral Truly's appointment as altering the ordinary meaning of "civilian life."

Third, it might be argued that the interpretation that retired officers may be "from civilian life" means that the enactment of the "civilian life" qualification served no function, in light of another, preexisting statute. When Congress passed the Space Act, another statute, *see* 70A Stat. 203 (1956), already prohibited active duty officers from appointment to a civil office. According to the argument, the "civilian life" requirement could not have been intended to exclude only persons already barred by another law. In *Eligibility of a Retired Regular Officer*, however, we noted that the general statute was on the books, while concluding that the phrase "civilian life" does encompass retired military officers. Our analysis there points to one possible reason that the "civilian life" qualification had an effect beyond the general bar against appointment of active duty officers. We concluded that a retired officer was not "automatically disqualified" from appointment, *Eligibility of a Retired Regular Officer* at 1, but that a particular retired officer might still be disqualified under specific facts. We suggested, for example, that "the spirit" of the qualification might call for an officer to "'have ceased to engage in military service and entered civil life and civil pursuits.'" *Eligibility of a Retired Regular Officer* at 7 (quoting *1930 Opinion*, 36 Op. Att'y Gen. at 402).[4] We need not resolve here the precise relationship of

---

[4] Moreover, the "civilian life" requirement goes beyond the current version of the general prohibition against service by a retired officer, 10 U.S.C. § 973 (2006), because some retired officers—in particular, reservists

the "civilian life" qualification and the current version of the preexisting statute, 10 U.S.C. § 973, except to note that there can be little doubt about the eligibility of a retired officer who has engaged in civilian pursuits (whether or not such an engagement is essential), even if there might be a prudential reason for enacting a statute (which might be unnecessary) to remove any possible question in the case of an officer who retired immediately before appointment.[5]

Finally, although no court has considered whether a retired military officer is eligible to be appointed to an office with a "from civilian life" qualification, there might be an argument that attempts to draw some significance from the conclusions of courts, in contexts other than appointments, that officers on the retired list remain members of the military and are deemed to be in military service. As the courts note, these retired officers are subject to the Uniform Code of Military Justice, to court-martial, and to recall to active duty by the Secretary of Defense. The Supreme Court explained in *United States v. Tyler*, 105 U.S. 244 (1882), for example, that persons whose names are on the retired list remain in "military service":

> It is impossible to hold that men who are by statute declared to be a part of the army, who may wear its uniform, whose names shall be borne upon its register, who may be assigned by their superior officers to specified duties by detail as other officers are, who are subject to the rules and articles of war, and may be tried, not by a jury, as other citizens are, but by a military court-martial, for any breach of those rules, and who may finally be dismissed on such trial from the service in disgrace, are still not in the military service.

*Id.* at 246.

This precedent, however, does not bear significantly on the current issue. Although the Court's opinion in *Tyler* concluded that "retired officers are in the military service of the government," *id.*, the Court was not asked to decide whether such officers are in "civilian life" or military life. A retired military officer could be in military service as a result of continuing to hold a commission, but insofar as his daily pursuits are civil, he would live a civilian life. As the Attorney General recognized in the *1930 Opinion*, the "fact that a man has a definite connection with the Military Establishment . . . does not prevent him from being properly treated as in civil life." 36 Op. Att'y Gen. at 400.

---

who are on active duty for 270 days or less—could serve in Senate-confirmed positions under section 973 but would not meet the "civilian life" restriction.

[5] Under a line of cases in the Court of Claims, a provision giving additional service credit to officers "appointed from civil life" might have been unavailable to an officer who resigned with the purpose of rejoining the military and who then claimed he had come from "civil life." *Compare Guilmette v. United States*, 49 Ct. Cl. 188, 192 (1914) (holding that an officer "was in fact and in law completely separated from the public service" during a 17-day period and was entitled to the credit), *with Barber v. United States*, 50 Ct. Cl. 250, 256 (1915) (holding that where an officer "never intended to enter civil life if he could remain in the service," a break of several weeks did not amount to entry into "civil life"). An opinion of our Office, *Federal Election Commission—Appointment of Members (2 U.S.C. § 437)*, 2 Op. O.L.C. 359 (1977), read *Guilmette* and the *1930 Opinion* as calling for an appointee "from civilian life" to have gone through more than an "immediate break" from military duty. We need not address here whether there is such a limit or whether it is sufficient that the officer, upon retiring, does not seek a quick return to active duty.

### III.

We therefore conclude that a retired military officer—and certainly one who has engaged in civilian pursuits—qualifies for appointment as Administrator of NASA. Although there are possible arguments on the other side, we believe that these arguments are ultimately unpersuasive.

/s/

DANIEL L. KOFFSKY
Deputy Assistant Attorney General